

**FILED**
7/15/2025
E.C
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| MINOR CHILD GW,<br>MINOR CHILD GR, and<br>KENTON GIRARD, |  |
| Plaintiffs, | Civil No.  1:25-cv-04551 |
| v. | District Judge Edmond E. Chang |
| JUDGE REGINA A. SCANNICCHIO,<br>JUDGE ROSSANA P. FERNANDEZ,<br>JUDGE WILLIAM YU,<br>JUDGE ROBERT W. JOHNSON,<br>JUDGE EILEEN M. O'CONNOR,<br>PHILIP A. KIRALY,<br>BRADLEY S. LEVISON,<br>JANE F. GIRARD,<br>MATTHEW D. ELSTER,<br>ENRICO J. MIRABELLI, and<br>BEERMANN LLP, | <u>First Amended Complaint and Jury Demand</u> |
| Defendants. |  |

Plaintiffs Minor Child Gw, Minor Child Gr, via their counsel Toma Makedonski Esq, and Kenton Girard in pro se, for their First Amended Complaint brought pursuant to FRCP 15(a)(1)(B) against Defendants **hereby request a trial by jury** pursuant to FRCP 38(b) and allege as follows:

### BACKGROUND STATEMENT

1.      On July 2023, Prosecutor Mary Stein from the Cook County State's Attorneys Office identified Minor Child Gw and Minor Child Gr as the victims of a long-running history of sexual abuse and rape at the hands of their biological mother Jane F. Girard.

2.      However, once Jane F. Girard's attorneys learned of the criminal investigation, they assisted her in immediately securing criminal defense counsel Jennifer Hansen Esq, who

upon receipt of a request from the State's Attorney's Office to submit Jane F. Girard to interrogation informed Prosecutor Mary Stein on September 7 2023 that Ms. Girard was duly asserting her Fifth Amendment right against self-incrimination. Therefore, from that point in time, from a civil standard Jane F. Girard is an admitted child sex abuser and rapist.

3.      At that time, Ms. Girard was indicated by the DCFS for the filing of felony child sex abuse charges. However, those criminal charges did not materialize because upon information and belief, Jane F. Girard and her counsel at Beermann LLP directed a bribe to be paid to Detective Ryan McEnerney of the Village of Glencoe in order to render a finding that the recommended criminal charges were "unfounded". Shortly after evidence was adduced as to the illicit conduct, and pursuant to an internal investigation, Mr. McEnerney was demoted from the role of lead detective to being responsible for "Facility Maintenance" wherein he is no longer entrusted to play any role whatsoever in criminal investigations.

4.      While Jane F. Girard and her attorneys at Beermann LLP appear to have greased the wheels of law enforcement to evade her criminal liability, a civil lawsuit filed by the minor children against their biological mother – seeking damages for *inter alia* sexual assault – advances in the Law Division before Judge Eileen M. O'Connor under *Minor Child Gw et al. v. Jane F. Girard et al.*, Cook County Case No. 2024-L-012053 ("Rape Lawsuit").

5.      Additionally, Ms. Girard has been the target of at least two (2) other criminal investigations: (a) on January 16 2023, Ms. Girard illegally recorded a conversation inside the confines of a private doctor's office, in violation of the eavesdropping law as codified under 720 ILC 5/14-2 et seq., and (b) on or around March 27 2024, Ms. Girard illegally emplaced an Apple Air Tag on the vehicle used jointly by Gw and Gr as well as Plaintiff Kenton Girard's current wife, in violation of the electronic tracking law as codified under 720 ILCS 5/21-2.5. In a

2                                          *Minor Child Gw. et al. v. Scannicchio et al. – FAC*

disturbing pattern, Ms. Girard asserted her Fifth Amendment right against self-incrimination under questioning by Detective Ryan McEnerney on or around May 7 2024, who refused to file charges under either investigation.

6. From September 7 2023, Beermann LLP knew their client was, from a civil point of view, an admitted child sex offender and rapist – as well as an admitted stalker, per her Fifth Amendment invocation under the Air Tag investigation. As a result, given their voluminous experience in family court and their intimate familiarity with the law, Beermann LLP and its attorneys were exquisitely aware that Jane F. Girard had been divested of her right to seek a custody remedy or to challenge parenting allocation in the Domestic Relations Division.

7. Notwithstanding these facts, Beermann LLP has actively hidden the fact of Ms. Girard's Fifth Amendment allocution and has aggressively shepherded Jane F. Girard through post-decree proceedings under *IRMO Girard*, Cook County Case No. 2015-D-009633 ("Custody Lawsuit") for the last three (3) years, filing no less than twenty (20) motions seeking sanctions against or incarceration of Plaintiff Kenton Girard or his current wife Marissa Girard.

8. Moreover, Beermann LLP has a very friendly audience in the family courts of Cook County, wherein Plaintiff Kenton Girard has been the victim of a frivolous, abusive and vexatious circus of legal proceedings presided by a revolving door of eleven (11) different judicial officers. In parallel, the rights of the minor children Gw and Gr have been trampled. First and foremost, the Child Representative Joel J. Levin Esq withdrew in August 2024 leaving Gw and Gr without representation or a voice under the Custody Lawsuit. Second, as victims of child sexual abuse duly identified by Prosecutor Mary Stein, the family court has entirely abrogated its obligations to the minor children under the Illinois Crime Victims Bill of Rights, as set forth under the Illinois Constitution (Ill. Const. 1970, Art. I, §8.1).

9.     As to the former, shortly after the resignation of Mr. Levin, Gw and Gr propounded (pro se) a motion to intervene in the Custody Lawsuit, and the now-recused judicial officer Rossana P. Fernandez struck their motion without giving them the opportunity to re-submit via counsel or recognizing the need to install a new Child Representative.

10.     As to the latter, Gw and Gr have a right to timely notice of and participation under all court dates, in addition to a panoply of other rights including *inter alia* the entry of a protective order against their rapist and biological mother Jane F. Girard, court hearings on whether to provide access to any of their confidential records, entering an appearance by counsel of their choosing, and the designation of support persons to attend all court dates.

11.     Meanwhile, Beermann LLP attorney Matthew D. Elster has played a critical, extra-judicial role in suppressing the various criminal investigations of Jane F. Girard. Mr. Elster is friends with fellow University of Illinois alumnus Bradley S. Levison.  In turn, Mr. Levison – who plays a significant role in the governance of the Village of Glencoe as a commissioner – has leveraged his influence over Village Manager Philip A. Kiraly in order to lean on the Department of Public Safety to back off the investigations.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal law. This Court also has jurisdiction under 28 U.S.C. §1343(a)(3) to redress deprivations "under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States."

13.     The Court has authority to grant injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's inherent equitable powers.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants work and reside in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

15. Venue is further proper in this district as to those claims which do not specifically raise federal and constitutional questions under 28 U.S.C. §1367(a).

16. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

17. **Plaintiff Minor Child Gw** ("Gw") is a minor daughter of Plaintiff Kenton Girard and Jane F. Girard and resides in Glencoe with Kenton Girard.

18. **Plaintiff Minor Child Gr** ("Gr") is the fraternal twin sister of Gw and resides in Glencoe with Kenton Girard.

19. **Plaintiff Kenton Girard** is party to the Custody Lawsuit and a long-time resident of Glencoe.

20. **Defendant Regina A. Scannicchio** is the presiding judge over the Domestic Relations Division of Cook County. She is being sued in her personal capacity.

21. **Defendant Rossana P. Fernandez** is a circuit judge in the Domestic Relations Division who has recently presided over the Custody Lawsuit until she recused herself in January 2025. She is being sued in her personal capacity.

22. **Defendant William Yu** is an associate judge in the Domestic Relations Division, Calendar 89, who took over the Custody Lawsuit after Hon. Fernandez recused herself from the proceedings. He is being sued in his personal capacity.

23.     **Defendant Robert W. Johnson** is an associate judge in the Domestic Relations Division, Calendar 23. He is being sued in his personal capacity.

24.     **Defendant Eileen M. O'Connor** is a circuit judge in the Law Division in Cook County. She is being sued in her personal capacity.

25.     **Defendant Philip A. Kiraly** is the Village Manager of the Village of Glencoe and a resident of Glencoe. He is being sued in his personal capacity.

26.     **Defendant Bradley S. Levison** is a commissioner of the Village of Glencoe and a resident of Glencoe. He is being sued in his personal capacity.

27.     **Defendant Jane F. Girard** is the biological mother of the minor children parties hereunder, namely Gw and Gr.

28.     **Defendant Matthew D. Elster** is an attorney at Beermann LLP who represents Jane F. Girard under the Custody Lawsuit. He is being sued in his personal capacity.

29.     **Defendant Enrico J. Mirabelli** is a senior partner at Beermann LLP who has been steering the litigation under the Custody Lawsuit. He is being sued in his personal capacity.

30.     **Defendant Beermann LLP** is the law firm where Mirabelli and Elster work.

<u>The Scuttled Criminal Investigations of Jane F. Girard</u>

31.     Upon information and belief, Defendant Elster took charge of the criminal investigation initiated by Gw and Gr into the sexual abuses and rapes by Jane F. Girard in July 2023. Upon learning of the same, he reached out to his longtime friend[1] Bradley S. Levison – a Glencoe resident and commissioner and very connected concerning matters relating in any way to Glencoe and the North Shore – with the specific request that Mr. Levison unlawfully intervene

---

[1] Mssrs. Elster and Levison are moreover social friends wherein they dine out together in Glencoe at Guildhall and socialize at the Glencoe Golf Club.

in the criminal investigation incepted by Prosecutor Mary Stein.

32.     Upon information and belief, Mr. Levison put Defendant Elster in touch with Kathryn Ciesla, a well known "fixer" in the North Shore. She would arrange for a bribe to be delivered to the Glencoe Department of Public Safety. Upon information and belief, Mr. Levison would also speak with Philip A. Kiraly, the Village Manager, to ensure that the police investigation would end with a finding of "charges unfounded" especially with the financial consideration being delivered to erstwhile Detective Ryan McEnerney.

33.     Incidentally, Mr. Kiraly has raised eyebrows for his eye-popping salary as a municipal employee, which is approximately $325,000 per year, not including a non-recourse loan which he receives each year to pay for his real estate taxes for his residence in Glencoe. The father of four children appears to enjoy a lavish lifestyle, such as wherein he recently purchased an Hermes purse for his wife for approximately $20,000. By contrast, the municipal manager for nearby Kenilworth makes about $185,000 per year.

34.     Upon information and belief, the same actors were involved in the "charges unfounded" disposition for the Apple Air Tag investigation from on or around April 2024. Upon information and belief, Mr. Elster called in another favor from Mr. Levison – again requesting specifically that Mr. Levison unlawfully intervene in the criminal investigation – who in turn called Mr. Kiraly to smooth over the police investigation, which again resulted in "charges unfounded" from erstwhile Detective Ryan McEnerney.

35.     Incidentally, as an uninvited guest (along with Nikki Larson from the Village of Glencoe), Mr. Levison vocally trashed participants and attendees at an Anti-Home Rule meeting at Hometown Coffee in Glencoe organized by Glencoe resident Myles Mendoza on or around October 10 2024. At that meeting, Mr. Levison openly criticized Mr. Girard and used epithets to

describe his daughter's allegations against their mother and Mr. Girard's pending lawsuit against the Village of Glencoe, in which matter Mr. Levison's old law firm Wilson Elser is providing representation. Mr. Levison's antics were so outrageous and disrespectful at that meeting that a number of residents in attendance told him to his face, publicly, that he was the most disrespectful person that they had ever encountered and requested him to leave the meeting.

The Tenure of Child Representative Joel J. Levin

36.     Erstwhile Judge William S. Boyd appointed Joel J. Levin Esq *sua sponte* on July 14 2023 as the child representative for Gw and Gr under the Custody Lawsuit. This appointment was perfected pursuant to the resignation of the guardian ad litem Vanessa Hammer.

37.     Similar to all of the other court-appointed family law functionaries before him in the underlying family law proceedings, Mr. Levin unreasonably favored Beermann LLP at all points. Indeed, Mr. Levin frequently accepts appointments under family court matters in which Beermann LLP is involved. In the entire span of his appointment, Mr. Levin communicated with Gw and Gr only a small handful of times.

38.     Most egregiously, Mr. Levin refused to inform the court about correspondence he received as to the long history of sexual abuse by Jane F. Girard from the therapists for Gw and Gr during his tenure, namely (a) Maddie Mays from the Counseling Center of the North Shore (based in Winnetka) on behalf of Gw and (b) Chris Aguirre from the Center of Psychology and Wellness (based in Northbrook) on behalf of Gr.

39.     Ultimately, Gw and Gr expressed their intense dissatisfaction with Mr. Levin's failed advocacy on their behalf. In their last written correspondence with Mr. Levin in August 2024, Gw and Gr wrote in part "The persistent disregard for our testimony not only undermines

the integrity of the legal process but also poses a direct threat to our fundamental right to reside in an environment where we feel safe and secure."

40.     Rather than adopt a more proactive posture to work towards their collective best interests, Mr. Levin moved to withdraw as the child representative on August 27 2024. The court thereupon approved Mr. Levin's resignation, and Gw and Gr have since been without representation – indeed without any voice – in the Custody Lawsuit. Indeed, the Illinois Marriage and Dissolution of Marriage Act (as codified under 750 ILCS 5/101 et seq.) contemplates the appointment of guardians ad litem, child representatives and other persons to ensure that the best interests of the children in family court proceedings are always being served. It is axiomatic that allowing nine months to pass under the Custody Lawsuit without any voice for the minor children cannot possibly be serving their best interests, particularly given their evolving needs and changing circumstances.

Hon. Fernandez: a chapter of anger and incompetence

41.     Around the same time, the erstwhile judicial officer Renee Goldfarb recused herself from the Custody Lawsuit, owing to a growing storm cloud over substantial allegations about her taking bribes from Beermann LLP in order to deliver decisions favorable to Jane F. Girard. In her place, Presiding Judge Regina Scannicchio appointed Hon. Rossana Fernandez to take over as the judicial officer, with an initial court date in September 2024.

42.     Hon. Fernandez proved herself to be yet another incompetent and compromised judicial officer. The initial court date on September 5 2024 was a status conference open to the public and proved to be an epic travesty. Investigative journalist Michael Volpe – who was a court watcher on the September 5 2024 court date – described the action wherein Hon. Fernandez disconnected court watchers from the court's Zoom session:

The action began when Tina Swithin, from One Mom's Battle, logged on. She told me she was about fifteen minutes late, but Hon. Fernandez quickly took notice. Tina told me that she routinely court watches, and her general protocol is to turn her microphone and video off, because having them [on] can cause a distraction. Hon. Fernandez saw it differently. She quickly demanded her video on, and for Tina to identify herself. Tina turned her video on and wrote that she was an observer for the Girard case. "As soon as she saw that, she was fuming," Tina told me. "She basically accused us of harassing the court." Tina called Fernandez "unhinged".

43.     Completely abandoned while the Custody Lawsuit moved forward, and in shock after hearing about the September 5 2024 court date, Gw and Gr took stock of their situation and after a few weeks of diligent study as to the Illinois Code of Civil Procedure and review of publicly available filings from other proceedings put together their own motion to intervene, under the authority of 735 ILCS 5/2-408 which authorizes a motion to intervene "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action".

44.     They duly filed a motion to intervene, with proper advance notice of presentment at the next court date of October 18 2024, to move *inter alia* for a stay of the proceedings while the corruption and bribery of judicial officers exemplified by the recusal of Hon. Renee Goldfarb was fully reviewed under an investigation by the authorities.

45.     In parallel Plaintiff Kenton Girard's current wife Marissa Girard[2] decided to do something about Hon. Fernandez's affront to the First Amendment and separate steadfast refusals to accommodate her under the Americans with Disabilities Act. Marissa duly and timely filed a motion for substitution of judge as of right directed at Hon. Fernandez on October 16 2024.

46.     At the subsequent October 18 2024 court date, Hon. Fernandez orally granted the motion (as has been memorialized under a transcript generated by the court reporter) and thereby

---

[2] The circumstances surrounding the joinder by Jane F. Girard as to Marissa Girard under the Custody Lawsuit provides evidence of a larger pattern of chronic and pervasive abuses in the Domestic Relations Division. To wit, Marissa was wrongfully and deficiently joined as a third party respondent without being actioned with a pleading in violation of her constitutional rights to fair notice and in violation of 735 ILCS 5/2-201(a) and despite the fact that she is neither a parent nor accorded parenting time.

divested herself of jurisdiction over the Custody Lawsuit.

47.     However, based on the goading of Beermann LLP attorney Enrico Mirabelli, Hon. Fernandez subsequently "changed" her ruling. The problem with the sequence of events is that at the point at which Hon. Fernandez "changed" her ruling to a denial of Marissa Girard's motion to remove her, she had no jurisdiction to be making any rulings or propounding any orders or directives whatsoever.

48.     What's worse, Hon. Fernandez proceeded to conduct an entire case management conference, producing a Trial Order complete with deadlines for taking written and oral discovery, and disclosing witness lists, and so forth. In addition, she struck the motion to intervene filed by Gw and Gr, under the grounds that minors cannot file into the case pro se yet fully cognizant that Gw and Gr were wholly without a voice in the proceedings.

49.     Once the Trial Order was "perfected" Hon. Fernandez ceded jurisdiction back to Calendar 1 whilst the matter of her removal was adjudicated by Hon. Scannicchio. Thereafter, Gw and Gr made countless entreaties to Hon. Scannicchio and the Office of the Presiding Judge of Domestic Relations Division to alternatively allow them to file  into the Custody Lawsuit on their own behalf or via a duly appointed Child Representative.

50.     In all instances, Hon. Scannicchio and her office summarily disregarded the requests from Gw and Gr, however on one occasion ironically referred them to "pro se litigant resources".

Extreme jurisdictional and procedural chaos

51.     Meanwhile, pursuant to the Trial Order at ¶10 signed by Hon. Fernandez on October 18 2024 (and as modestly modified on December 3 2024 without alteration of ¶10), a notice as to dismissal for want of prosecution was filed on December 20 2024.

52.    Other notices filed into the Custody Lawsuit pointed out the cognitive dissonance between Hon. Fernandez's open court pronouncement as to her own recusation followed by the entry of the "Trial Order" and even the convening of additional court dates.

53.    Ultimately, after a hearing on the removal of Hon. Fernandez, Hon. Scannicchio transferred the case to Hon. Flannigan, Calendar 51 on January 14 2025. Numerous filings on the following days duly bore the stamp of Calendar 51. On January 23 2025, however, Hon. Scannicchio transferred jurisdiction back to Hon. Fernandez, Calendar 99. Hon. Fernandez proceeded to recuse herself and Hon. Yu, Calendar 89, was newly appointed by Hon. Scannicchio in what can only be described as a dizzying game of musical chairs.

54.    Problematically, however, the transfer orders between Hon. Scannicchio/Calendar 1 and Hon. Flannigan/Calendar 51 on January 14 2025 and January 23 2025 were never produced, much less filed on the docket. Because subject matter jurisdiction cannot be waived, and its transfer must be reduced to a form document filed on the docket, the operative jurisdiction in the period following the "game of musical chairs" is actually unknown.

55.    Numerous requests to produce and file the missing judicial transfer orders went and remain unheeded. The inference that a presiding judge of an entire judicial division would be deliberately concealing a judicial transfer order from the docket and the parties would normally feel like a "bridge too far". However, the reality is that Hon. Scannicchio is either spectacularly incompetent or dirty – which conclusion has also been reached by the Illinois Appellate Court[3]. It is therefore unsurprising to see her brazenly commit perjury and take premeditated action in violation of 18 U.S. Code § 1512: (c)Whoever corruptly— (1) alters, destroys, mutilates, or

---

[3] In *IRMO Roseanne Tellez and David A. Cerda*, 2024 IL App (1st) 241866, the Illinois Appellate Court ruled on December 20 2024 that Hon. Scannicchio abused her discretion by jailing David A. Cerda for civil contempt with a cash bail set at $248,648.73. In that matter, Hon. Scannicchio recklessly disregarded the requirement to assure that a civil contemnor has the ability to pay the purge remedy. Mr. Cerda was nonetheless illegally detained in squalor inside of the Cook County Jail for three months.

**conceals a record**, document, or other object, or attempts to do so, **with the intent to impair the object's integrity or availability** for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

56.     Completely disregarding the pile of irregularities, Hon. Yu proceeded to set the matter for a "mystery trial" – so named because no pleadings have yet been filed in the Custody Lawsuit – on May 1-2 2025. On a recent court date on February 14 2025 (as memorialized by a transcript taken by a court reporter), Beermann LLP attorney Enrico J. Mirabelli characterized the "mystery trial" as a criminal contempt trial with a single witness, Phyllis Amabile MD who was the court-appointed Custody Evaluator. Needless to say, a criminal trial cannot take place in the Domestic Relations Division and Beermann LLP and its attorneys are not state prosecutors. Moreover on July 10 2025, Mr. Mirabelli signed and filed a motion for a criminal contempt proceeding against Kenton and Marissa Girard ostensibly to take place during the "mystery trial" which for now has been cancelled.

57.     More recently, on April 17 2025, Beermann LLP has shapeshifted the "mystery trial" to involve a witness disclosure of eight (8) additional witnesses. Always disregarding the rules and norms when it comes to their own conduct, Beermann LLP filed its only formal witness disclosure approximately 75 days after the due date identified in the operative "Trial Order" penned by Hon. Fernandez.

58.     Making matters more complex, third party claims were filed into the Custody Trial on March 5 2025, and those third party defendants have not been noticed as to the upcoming "mystery trial", neither have they received notice on any of a blizzard of other filings by Beermann LLP including notably their untimely witness disclosure.

Cue to the Vengeful Hon. Robert W. Johnson

59.     On March 18 2025, Beermann LLP attorney Matthew D. Elster propounded a Motion to Disqualify directed at Marissa Girard's attorney Robert A. Holstein Esq, a member of the Illinois Bar since the 1960s. The motion was premised on Mr. Holstein's dilatory binding of legal malpractice insurance, which matter is now being imminently resolved according to an affidavit from Mr. Holstein. In the relief sought, Mr. Elster proposed that Marissa Girard receive a standard 21 day period to find and retain new counsel. In reality, because she suffers from extreme disabilities, 21 days is likely on the extreme short end of reasonability.

60.     Because Hon. Yu was pulled out of the Custody Trial in February 2025 pending resolution of a petition seeking his removal for cause – which matter remains unresolved – Hon. Scannicchio decided to appoint Hon. Robert W. Johnson as the referee of the hearing set for April 24 2025 on Mr. Elster's motion to disqualify. The problem is Mr. Johnson is also the appointed referee under 735 ILCS 5/2-1001(a)(3) – under which statutory authority he has only the narrow jurisdiction of deciding the issue of Cause as to the removal of Hon. Yu. Hon. Scannicchio's order violates the statute.

61.     Regardless of these complications, all of which have been noticed in the Custody Trial, Hon. Johnson proceeded to convene his hearing on April 24. The hearing seemed to constitute a dark and nefarious effort to "outdo" Hon. Fernandez's corrupt performance from September 5 2024.

62.     During the hearing, Hon. Johnson muted Gw and Gr's attorney, Toma Makedonski Esq, who had also noticed for presentment a new Motion to Intervene. On several occasions, Attorney Makedonski tried to raise attention to the violations of the Trial Order, and the requirements to accommodate Gw and Gr under the Illinois Crime Victims Bill of Rights,

and the obvious violations of notice requirements as to Gw and Gr – and also the third party defendants.

63. Similarly, Hon. Johnson muted Plaintiff Kenton Girard, who had similarly noticed a Motion to Disqualify Hon. Scannicchio. When Marissa Girard tried to argue for appropriate time to find new counsel, Hon. Johnson muted her. When Plaintiff Kenton Girard started to complain that Hon. Johnson did not have the requisite jurisdiction to rule on the motion to disqualify, he was again muted.

64. In an outrageous and inhumane affront to the Americans with Disabilities Act, Hon. Johnson vetoed the 21 day period for finding and retaining new counsel for Marissa Girard, instead setting the hearing on the removal of Hon. Yu for Cause for **three (3) court days later** at 8:00 AM on April 29 2025 – and in person, no less – in the Daley Center. Clearly, Hon. Johnson was taking marching orders from Hon. Scannicchio and seemingly Beermann LLP to expedite the proceedings to the "mystery trial", come Hell or High Water.

65. In a tacit admission that Hon. Johnson was overstepping his jurisdiction, the order signed by Hon. Johnson after the April 24 2025 hearing bears a caption indicating that the Custody Trial is now relegated to **Calendar 23**. In fact, until the matter of Cause against Hon. Yu is adjudicated, the proceedings remain on Calendar 1. Furthermore his anger underlying the order is transparent. Included in the order is a "finding" that Kenton Girard knew about Attorney Holstein's licensing issues and did not take timely action. In actuality, Attorney Holstein has appeared exclusively on behalf of the disabled person, Marissa Girard.

66. Later that very evening, Gw and Gr penned an email message, captioned "URGENT", to Hon. Scannicchio and the Office of the Presiding Judge, copying Hon. Robert W. Johnson and stating in relevant part:

We urgently request that:

1. Our status as crime victims be formally recognized by the Court, and that our rights under the Illinois Crime Victims Bill of Rights be honored
2. The proceedings are stayed for sixty (60) days to allow us to designate support persons to attend all court dates going forward
3. A protective order against our abuser and biological mother Jane Girard be entered instanter
4. After the stay, our legal representative be permitted to present our motion to intervene
5. The criminal investigation be re-initiated as to Jane Girard
6. Our right to continue our stable and successful life with our father be respected and this protracted litigation be brought to an end

67.     As of this filing, no response has been tendered to Gw and Gr regarding their urgent communication demanding accommodation under the Illinois Crime Victims Act Bill of Rights. Follow-up communications from Plaintiff Kenton Girard, Marissa Girard and Attorney Makedonski to the Domestic Relations Division and courtroom administrators received but a solitary response, from courtroom disabilities coordinator Carina Segalini, who agreed with Marissa Girard that a period of three (3) court days to find and retain new counsel was unreasonable, especially for someone suffering from two ADA qualifying disabilities.

68.     Subsequently, on April 29 2025 and May 1 2025, Hon. Johnson proceeded to conduct court dates and sign court orders at the behest of Beermann LLP and Jane F. Girard. However, on these dates the case had been removed to federal court under the exclusive jurisdiction of District Judge Jeremy Daniel. Such conduct by Hon. Johnson constitutes a direct violation of the Seventh Circuit's admonishment under *Fenton v. Dudley*, 761 F.3d, 3 770, 773 (7th Cir. 2014) wherein state court proceedings on removal violate 28 U.S.C. § 1446(d). Both orders were prepared by Beermann LLP. To evince their true conniving ways with the Cook County Judges, Beermann LLP orchestrated an in absentia hearing before Hon. Johnson on June 24, 2025 without notice to the parties and in violation of the email distribution list on the order setting the June 24 2025 court date.

The calm before the storm

69. Plaintiffs have important business before the family court. Mr. Girard has noticed his Motion to Disqualify[4] Hon. Scannicchio as well as a Motion to Disqualify Beermann LLP for presentment, and Gw and Gr have a Motion to Intervene properly signed and filed by their counsel. All of these papers have been disregarded. It is unacceptable that the Domestic Relations Division is seemingly disregarding all papers not authored by Beermann LLP.

70. In an email message on the evening after Hon. Johnson's outrageous hearing, Beermann LLP attorneys Enrico Mirabelli and Matthew D. Elster indicated that he would be seeking to have these pre-trial motions heard on the first day of the now-cancelled "mystery trial". Notwithstanding that Mssrs. Mirabelli and Elster habitually misrepresent material issues to the court (such as on April 24 2025, wherein they pleaded with Hon. Johnson to keep the trial date intact, because the minor children "need to be heard"), and further notwithstanding that there are no pleadings to provide constitutionally required fair notice to any party as to the claims or defenses, pre-trial motions have no place at trial.

71. Separately, a motion seeking limited emancipation under Cook County Case No. 2024-COMS-0016 to allow Gw and Gr to sign their own business contracts (for their fast-growing multi-million dollar jewelry business White Lemon Creations) has been stymied for the last year by Beermann LLP. However, that tide turned dramatically on April 23 2025, wherein prominent Cook County Judge Kathy Flanagan from the Law Division reprimanded Beermann LLP in open court for their delay tactics, denying their motion to consolidate into the Custody Lawsuit and stating that the Domestic Relations Division is a messed up court system.

---

[4] Similar to a motion for substitution of judge, a motion to disqualify Hon. Scannicchio must be resolved before any other proceedings can take place in the Custody Lawsuit, because she controls the entire Domestic Relations Division. Put differently, if she is disqualified, the matter must be litigated outside of the Domestic Relations Division – at least until such point in time that Hon. Scannicchio is relieved of her duties.

*Minor Child Gw. et al. v. Scannicchio et al. – FAC*

In a stunning rebuke, Judge Flanagan ruled that Gw and Gr's substantial rights would be violated by allowing the family courts to decide their limited emancipation.

72.    The court has ordered depositions to proceed under the limited emancipation matter under which the deposition of Jane F. Girard will presumably soon reveal that she is either (a) asserting her Fifth Amendment right against self-incrimination, or (b) guilty of the sexual abuse of Gw and Gr. In either scenario, the Custody Proceedings – which at 41 months currently outrageously exceed the 18 month time limit imposed under Illinois Supreme Court Rule 922 will be proven to be sham proceedings wherein Jane is from a civil standard a child sex abuser.

Judge Eileen M. O'Connor proves the conspiracy between Beermann LLP and judges.

73.    On a court date on June 18 2025, Beermann LLP emplaced a motion seeking Rule 137 Sanctions before Judge O'Connor under the Rape Lawsuit. Their motion was premised on the improper naming of Beermann LLP attorneys Karen Paige and Candace Meyers under their supposed statutory reporting requirements as to child abuse. They were dismissed from the suit under the reasoning that the so-called "ANCRA" statute does not create a reporting obligation for attorneys.

74.    As evidenced by the transcript prepared by the court reporter present on June 18 2025, Judge O'Connor awarded sanctions against Kenton Girard **for the specific reason that he had repaired to federal court to file a lawsuit** against inter alia Beermann LLP attorneys and Cook County judges in supposed "violation" of her order to not sue attorneys or judges.

75.    Of course, Judge O'Connor does not operate the gates to federal court: federal court filings are moreover constitutionally protected. Her award against Kenton is an affront to federalism and dual sovereignty, comically outside the limits of her jurisdiction. The award would be funny if the circumstances were not so serious.

76.     In so doing, she has lifted the veil on an illegal "sanctions scheme" between herself and Beermann LLP proving (a) coordination between enterprise members (judicial officers and Beermann LLP attorneys working together), (b) simultaneous timing with the instant civil RICO lawsuit (*Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, pending before District Judge Pallmeyer). There is obvious corrupt intent because there is no legitimate basis for such sanctions, and money is flowing to the RICO defendants in retaliation for the instant civil RICO lawsuit. There is furthermore a pattern of activity: the sanctions scheme is (a) part of ongoing scheme to benefit Beermann LLP, (b) using judicial power for private gain, and involving (c) systematic abuse of process.

77.     Indeed, after the unconstitutional, federalism-offending sanction award by Judge O'Connor, Kenton Girard submitted an application for emergency injunctive relief before District Judge Pallmeyer. As of the date of this filing, that application remains pending. In context of the illegal sanctions scheme, it is no surprise that Judge O'Connor (who is now transferred off of the Rape Lawsuit) has allowed Jane F. Girard to stall on her responsive pleadings for the last six months.

78.     Finally, insofar as Judge O'Connor in her order from June 18 2025 is attempting to "retain jurisdiction" over the sanctions proceedings (Rule 137 claims are part of the case in chief and are not to be bifurcated), that "separate proceeding" she has ordered has the look and feel of a criminal contempt proceeding, which does get split off from the case in chief. Under a criminal contempt proceeding, Kenton Girard is entitled to notice of the claims against him (none has been provided, certainly not in writing) and because the substance is "indirect" (the offending federal court filings are outside of Judge O'Connor's direct knowledge) he is entitled to a panoply of due process protections, none of which have been provided.

## COUNT I - VIOLATION OF FIRST AMENDMENT
*42 U.S.C. § 1983; Scannicchio, Fernandez, Johnson, O'Connor*

79.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

80.     Defendants, acting under color of state law, deprived Plaintiffs of their rights under the First Amendment to the United States Constitution by disregarding their motions to intervene before the court on October 18 2024 and April 24 2025. Judge O'Connor, by punishing Kenton Girard for a federal court filing, has impermissibly chilled his protected speech.

81.     Defendants are not protected to judicial immunity because, inter alia, it was an administrative determination and not part of any judicial proceeding, and because Fernandez and Johnson acted wholly without jurisdiction. Similarly, O'Connor violated federalism.

## COUNT II - VIOLATION OF RIGHT TO A REMEDY
*42 U.S.C. § 1983; Scannicchio, Fernandez, Yu, Johnson, O'Connor*

82.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

83.     By deliberately and contumaciously disregarding both motions to intervene filed by Gw and Gr, including the latter filed by Attorney Makedonski; and by disregarding the various motions filed by Mr. Girard to cure the jurisdictional and procedural defects, to disqualify Hon. Scannicchio, the Plaintiffs' important business before the court languishes. By punishing Kenton Girard for a federal court filing, Defendant O'Connor has disregarded his constitutional right to a remedy.

84.     Plaintiffs have suffered injuries, damages and losses as a result of the violation of and interference with Plaintiffs' constitutionally protected right to a remedy.

## COUNT III - CIVIL CONSPIRACY
*Elster, Levison, Kiraly*

85.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

86.     At all times, when Defendant Elster solicited assistance from Defendant Levison to scuttle the criminal investigations of Jane F. Girard, he knew he was requesting him to

undertake illegal manipulations, to obstruct justice, and to abuse his position as a commissioner.

87.     At all times, when Mr. Levison sought assistance from Defendant Kiraly to smooth over the criminal investigations of Jane F. Girard, he knew he was requesting him to undertake illegal manipulations, to obstruct justice, and to abuse his position as Village Manager.

### COUNT IV - VIOLATION OF RIGHT TO FAIR NOTICE OF CLAIMS
*42 U.S.C. § 1983*; *Scannicchio, Fernandez, Yu, Johnson, Mirabelli, Elster*

88.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

89.     By failing to commence action against Plaintiff Kenton Girard with a pleading, in violation of the civil procedure rules in Illinois, these Defendants are in violation hereunder.

90.     By shot-gunning a "mystery trial", these Defendants are guilty of the same. Attorney Elster in particular acted under color of state law to manipulate the proceedings.

### COUNT V - NEGLIGENCE
*42 U.S.C. § 1983*; *Scannicchio, Fernandez, Yu, Johnson, Mirabelli, Elster*

91.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

92.     Wherein Gw and Gr were positively identified as sex abuse victims by Prosecutor Mary Stein, under the force and effect of the Illinois Crime Victims Bill of Rights, they were entitled to a panoply of protections including *inter alia* notice, participation and representation in the Custody Lawsuit by a counsel of their choosing.

93.     All Defendants were apprised of such fact – particularly Attorney Elster who concealed Jane F. Girard's Fifth Amendment allocution from the family court and Plaintiffs, for fear that some judicial officer would terminate the proceedings because Jane F. Girard had been rightfully divested of her right to pursue a family court remedy. All of these Defendants had a duty to honor the Illinois Crime Victims Bill of Rights, including Defendant Elster as an officer of the court and acting under color of state law and goading the judicial officers in their rulings.

94.     By disregarding these rights – and continuing to attempt to shot-gun a "mystery

trial" including the antics on April 24 2025 before Defendant Johnson – these Defendants have proximately caused Plaintiffs to incur substantial expenses, to experience anxiety, frustration, indeterminate loss of time, have impaired Plaintiffs' business ventures including White Lemon Creations and Mr. Girard's real estate business career and enterprises and to live in fear.

## COUNT VI - ABUSE OF PROCESS
*Jane F. Girard, Mirabelli, Elster, Beermann LLP*

95.      Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

96.      Jane F. Girard masterminded the violative Custody Proceedings – executed and maintained under the leadership of Attorneys Mirabelli and Elster – sustaining the proceedings against Kenton Girard (and parties in interest Gw and Gr) despite Jane being divested as a sex abuser of her right to seek a custody remedy, the proceedings far exceeding at 41 months the 18 month time limit imposed under Illinois Supreme Court Rule 922, and after the filing of an unrebutted notice of dismissal for want of prosecution on December 20 2024 among other fatal jurisdictional defects.

97.      One improper purpose of the Custody Proceedings has been to inflict emotional distress on Gw and Gr – who under the advancement of the proceedings could be forced to reunify with their rapist and biological mother – and to cause mental anguish, torment and anxiety for Kenton Girard as their father.

98.      Another improper purpose has been to stave off the filing of criminal charges to cast herself as a "victim" seeking "vindication".

99.      It is neither normal nor customary to sustain Custody Proceedings in abject disregardment of statutory limits, without establishing subject matter jurisdiction and despite termination of jurisdiction.

## COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Jane F. Girard, Mirabelli, Elster, Beermann LLP*

     *Minor Child Gw. et al. v. Scannicchio et al. – FAC*

100.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

101.    The named defendants acted intentionally and recklessly, and their conduct by sustaining the proceedings was extreme and outrageous.

102.    The sustaining of these proceedings – which ought to have never been initiated much less sustained for 41 months – has proximately caused Gw and Gr to experience severe emotional distress. Indeed they are currently in therapy to treat such. No reasonable person could be expected to endure the long running abuse of these illegally sustained proceedings without significant psychological impact, which is what has happened to Gw and Gr here.


WHEREFORE, Plaintiffs pray this Court grant the following relief:

1) Compensatory damages in an amount to be determined at trial;
2) Attorneys fees and costs under 42 U.S.C. § 1988 and under 29 U.S.C. § 794a(b);
3) Nominal damages for violations of constitutionally protected rights;
4) Such other relief that this Court may deem just, equitable and proper;


Dated: July 15 2025                         Respectfully Submitted,

for Kenton Girard:                          for Minor Child Gw and Minor Child Gr:

/s/ Kenton Girard                           /s/ Toma Makedonski, Esq.
965 Forestway Drive                         1271 Old Mill Ct
Glencoe, IL 60022                           Naperville, IL 60564
Email: kg5252@yahoo.com                     Email: legaltma@gmail.com
Tel: 773-425-4393                           Tel: 773-727-5491
                                            Attorney No. 37672

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this paper was electronically filed with the clerk of this Court on July 15 2025 and was provided via email to the attorneys who have filed appearances in this matter.

/s/ Kenton Girard