## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MINOR CHILD GW, | ) | |
| MINOR CHILD GR, and | ) | |
| KENTON GIRARD, | ) | |
| | ) | No. 25-CV-04551 |
| Plaintiffs, | ) | |
| | ) | Honorable Edmond E. Chang |
| v. | ) | Magistrate Judge Maria Valdez |
| | ) | |
| JUDGE REGINA A. SCANNICCHIO, | ) | |
| JUDGE ROSSANA P. FERNANDEZ, | ) | |
| JUDGE WILLIAM YU, | ) | |
| JUDGE ROBERT W. JOHNSON, | ) | |
| JUDGE EILEEN M. O'CONNOR, | ) | |
| PHILIP A. KIRALY, | ) | |
| BRADLEY S. LEVISON, | ) | |
| JANE F. GIRARD, | ) | |
| MATTHEW D. ELSTER, | ) | |
| ENRICO J. MIRABELLI, and | ) | |
| BEERMANN LLP, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS PHILIP KIRALY AND BRADLEY LEVISON'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Philip Kiraly and Bradley Levison, by their undersigned counsel, The Sotos Law

Firm, P.C., move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to

dismiss them from this case, with prejudice.

## INTRODUCTION

On April 25, 2025, Plaintiff Kenton Girard and his children, Plaintiffs Minor Child GW and

Minor Child GR (collectively, "Minor Children"), filed their most recent salvo against an

imagined cabal of conspirators, implicating this Court's valuable time and resources in a

fantastical saga entirely of their own making. As Defendants Matthew Elster, Enrico J.

Mirabello, and Beermann LLP detail in their Motion to Dismiss Plaintiffs' First Amended

Complaint, (Dkt. 53, "Beermann Motion"), Kenton Girard seeks to embroil yet another court in this flight of fancy, which originally began as a state law domestic dispute concerning the Minor Children and his former wife, Jane Girard. The original Complaint levied five counts against an array of Defendants, only one of which—conspiracy—is targeted at Glencoe Village Manager Phillip Kiraly and alleged Village Commissioner Bradley Levison ("Moving Defendants"); the conspiracy claim remains the sole claim pled against the Moving Defendants in the First Amended Complaint. (Dkt. 38, "FAC".)

On July 7, 2025, the Moving Defendants moved to dismiss. (Dkt. 34.) Eight days later, on July 15, 2025, Plaintiffs filed their FAC, adding the Honorable Eileen M. O'Connor, Jane F. Girard, Enrico J. Mirabelli, and Beermann LLP as additional Defendants. (*Id*.) Critically, however, the allegations of the FAC have not changed vis-à-vis the Moving Defendants. (*Compare* Dkt. 1, Compl. *with* Dkt. 38, FAC.)

Thus, to cut to the quick, the reasons supporting the Moving Defendants' dismissal have not changed based on the FAC's new allegations. Thus, the Moving Defendants again adopt the factual background set forth by codefendant Elster, this time as laid out in the Beermann Motion, as well as certain of the Beermann Motion's arguments that support the Moving Defendants' dismissal—specifically, the arguments concerning (1) the Minor Children's lack of capacity to sue in their individual names, (2) abstention, (3) the inadequacy of the direct liability claims against Elster, and (4) the inadequacy of the civil conspiracy claim. The Moving Defendants provide additional argument regarding abstention, civil conspiracy, and immunity.

Those arguments are fleshed out below, in detail, as the sheer preposterousness of this lawsuit cannot except the fact that it is a federal lawsuit nonetheless—demanding the Moving Defendants' vigorous case for dismissal. Because of elementary issues of standing, a suite of

abstention doctrines, the sheer inadequacy of the claims raised, and immunity under the Illinois Tort Immunity Act, dismissal should ensue, and the Moving Defendants should be exited from Kenton Girard's increasingly troubling vortex of conspiratorial delusion.

**PLAINTIFFS' ALLEGATIONS**[1]

By and large, the Beermann Motion lays out the factual predicate necessary to resolve this Motion. The Moving Defendants hereby incorporate the Beermann Motion's factual recitation as if fully stated herein. (Dkt. 53, Beermann Mot., "Introduction" and "Background/Allegations of the First Amended Complaint".) Included in that incorporation are the lawsuits referenced in the first footnote of the Beermann Motion, and the Moving Defendants join the request that the Court take judicial notice of those matters. (*Id.*, "Introduction" n.1.) Herein, the Moving Defendants utilize the same referents adopted in the Beermann Motion's first footnote to refer to those lawsuits. (*Id.*)

For the Moving Defendants, all that remains is to recount those allegations germane to the civil conspiracy claim pled against them in Count III. Initially, Plaintiffs allege that Jane Girard, the Minor Children's biological mother, was subject to several criminal investigations related to: (1) the sexual abuse and rape of the Minor Children; (2) the surreptitious recording of a conversation inside a physician's office on January 16, 2023; and (3) the illegal placement of an Apple Air Tag on a vehicle on or around March 27, 2024. (Dkt. 38, FAC ¶¶ 1–2, 5.)

The investigating detective, Ryan McEnerney, is alleged to have not only received a bribe to render a finding that sexual abuse charges against Jane be adjudicated as unfounded, but also to have otherwise refused to file criminal charges related to the alleged illegal recording and alleged

---

[1] The Moving Defendants deny all claims asserted against them. They treat Plaintiffs' factual allegations as true only for purposes of this Motion to Dismiss.

illegal tracking incidents.[2] (*Id.* ¶¶ 3, 5.) Per Plaintiffs, codefendant Elster allegedly suppressed "various criminal investigations" of Jane and directed that a bribe be paid to Detective McEnerney to ensure "that the recommended criminal charges were 'unfounded.'" (*Id.* ¶¶ 3, 11.) Plaintiffs also allege that Elster "took charge" of the criminal investigation related to Jane's purported sexual misconduct and specifically requested that Levison, an alleged Village of Glencoe Commissioner, "unlawfully intervene" in the investigation, which was incepted by prosecutor Mary Stein. (*Id.* ¶ 31.)

Levison is alleged to have "leveraged his influence over" Kiraly, the Village Manager, "in order to lean on the Department of Public Safety to back off the investigations." (*Id.* ¶ 11.) Plaintiffs claim that Levison put Elster in touch with Kathryn Ciesla,[3] a well-known "fixer" on Chicago's North Shore, who arranged for a bribe to be delivered to the Glencoe Department of Public Safety. (*Id.* ¶ 32.) Levison is further alleged to have spoken with Kiraly to ensure the police investigation would end with a finding of "charges unfounded," especially in light of financial consideration being delivered to Detective McEnerney. (*Id.*)

Finally, Plaintiffs allege that Elster called in another favor from Levison to ensure a "charges unfounded" disposition in the Apple Air Tag investigation. (*Id.* ¶ 34.) Specifically, Levison is alleged to have contacted Kiraly "to smooth over the police investigation," resulting in the "charges unfounded" determination by Detective McEnerney. (*Id.*)

---

[2] In the First Federal Case, Judge Pallmeyer recently dismissed Plaintiffs' claims against Detective McEnerney and the Village of Glencoe, in part, on grounds of abstention. First Fed. Case, Case No.: 24-cv-06882, Dkt. 121.
[3] Plaintiffs also asserted a civil conspiracy claim against Ciesla in the First Federal Case pending before Judge Pallmeyer, and Ciesla moved to dismiss that claim for reasons analogous to those set forth this in Motion. First Fed. Case, No. 24-cv-06882, Dkt. 84. After Plaintiffs failed to respond to Ciesla's motion, Judge Pallmeyer dismissed Ciesla from the case, with prejudice, after determining her motion was "well-founded." *Id.*, Dkt. 96.

## STANDARDS

Rule 12(b)(1) governs motions to dismiss based on subject matter jurisdiction. *Davit v. Davit*, 366 F. Supp. 2d 641, 649 (N.D. Ill. 2004). This includes a motion asking a court to decline jurisdiction based on abstention, which "fits more comfortably under Rule 12(b)(1)" than Rule 12(b)(6). *Bolton v. Bryant*, 71 F. Supp. 3d 802, 809 n.2 (N.D. Ill. 2014). The parties asserting jurisdiction—Plaintiffs here—bear the burden of proof. *Davit*, 366 F. Supp. 2d at 649. When presented with a facial challenge, the Court only accepts well-pled allegations as true. *Id*.

Rule 12(b)(6), on the other hand, governs motions to dismiss for failure to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive such a motion, Plaintiffs must provide the grounds of their "entitlement to relief[, which] requires more than labels and conclusions." *Id.* (citation and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "must dismiss a case if…the complaint fails to state a claim on which relief can be granted." *Sabo v. Mayorkas*, No. 23 cv 2189, 2024 WL 2863373, at *3 (N.D. Ill. June 5, 2024) (citing Fed. R. Civ. P. 12(b)(6)).

## ARGUMENT

### I.  The Minor Children Must Be Dismissed

The Beermann Motion argues that the Minor Children lack the capacity to sue, which argument the Moving Defendants adopt in full. (Dkt. 53, Beermann Mot., "The Minor Children Plaintiffs Lack Capacity to Sue".) Because the Minor Children lack the capacity to pursue this litigation, they must be dismissed.

## II. The Moving Defendants Fully Incorporate & Adopt the Beermann Motion's Arguments Concerning Abstention & Additionally Seek Dismissal Based on the *Rooker-Feldman* Doctrine

The Beermann Motion delineates a collection of abstention doctrines that support dismissal of the FAC, including the domestic-relations exception, *Colorado River*[4] abstention, and *Burford*[5] abstention. (Dkt. 53, Beermann Mot., "Rule 12(b)(1) Arguments".) The Moving Defendants adopt these arguments and requests for dismissal in full.

In addition, the *Rooker-Feldman*[6] doctrine should trigger dismissal, as the FAC clearly hopes to use this Court to achieve different results for grievances already pending in other family law matters. (*See, e.g.*, Dkt. 38, FAC ¶¶ 4, 7–10, 36–78.) In fact, Plaintiffs continue to dedicate nearly twelve pages of their FAC reciting what can only be described as a litany of grumbles regarding events that purportedly transpired in the state court domestic proceedings. (*Id.* ¶¶ 36–78.) Collectively, the inclusion of these allegations demonstrate that Plaintiffs are improperly attempting to invoke federal jurisdiction to correct perceived "wrongs" in the domestic proceedings, including various state court rulings.

For instance, Plaintiffs complain that Judge Rossana Fernandez changed a ruling without jurisdiction to do so. (*Id.* ¶¶ 47–48 (Judge Fernandez "had no jurisdiction to be making any rulings or propounding any orders or directives whatsoever"; she "conduct[ed] an entire case management conference, producing a Trial Order complete with deadlines for taking written and oral discovery, and disclosing witness lists, and so forth"; she "struck the motion to intervene filed by Gr and Gr, under grounds that minors cannot file into the case pro se").) Plaintiffs also launch complaints against other state court judges. (*See id.* ¶ 54 (complaining that transfer orders

---

[4] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).
[5] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[6] *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

between Judges Scannicchio and Flannigan were never produced or filed on the docket); *id.* ¶ 56 (Judge William Yu disregarded irregularities setting the domestic matter for a "mystery trial"); *id.* ¶¶ 74-75 (complaining that Judge Eileen O'Connor awarded sanctions against Kenton Girard in a state court proceeding).)

The *Rooker-Feldman* doctrine explicitly prohibits the Court from reversing state court judgments. "*Rooker-Feldman*…precludes federal courts, save the Supreme Court under 28 U.S.C. § 1257, from adjudicating 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced.'" *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also applies to claims that are "inextricably intertwined" with state court rulings. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

Plaintiffs' allegations are inextricably—*explicitly*—linked to the dissolution of the Girards' marriage and fallout therefrom, including the array of state court determinations mentioned in the FAC. "*Rooker–Feldman*…requires a party seeking review of a state court judgment or presenting a claim that a state judicial proceeding has violated their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court." *Id.* Under *Rooker-Feldman*, Plaintiffs have come to the wrong court, and their FAC should be dismissed.

Even if *Rooker-Feldman* were technically inapplicable, *Woodard* compels this Court to decline jurisdiction. In "*Woodard*, [the Seventh Circuit] held that the principles underlying the abstention doctrines—comity, equity, and federalism—*command* federal courts to abstain from cases that *might* interfere with state domestic-court proceedings, even when none of the abstention doctrines fits to the letter." *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *4 (7th

Cir. Jan. 17, 2023) (citing *Woodard*, 997 F.3d at 722–24)) (emphasis added). To the extent that any of the allegations set forth in Plaintiffs' FAC can be construed as raising a federal question, federal adjudication of those claims "threaten[s] interference with and disruption of state law domestic proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *Woodard*, 997 F.3d at 724; *See also* 24-cv-06882, Dkt. 121.

Finally, as referenced above, Plaintiffs made similar claims related to perceived grievances in ongoing state court custody proceedings in First Federal Case before Judge Pallmeyer. Judge Pallmeyer ruled that dismissal was appropriate, in part, due to substantially similar abstention arguments advanced here—including the concerns espoused in *Woodard*. First Fed. Case, No. 24-cv-06882, Dkt. 121. Judge Pallmeyer's findings strongly support dismissal based on abstention in this matter.

### III.   Plaintiffs Do Not Assert a Valid Conspiracy Claim Against the Moving Defendants (Count III)

Plaintiffs' conspiracy claim is titled "civil conspiracy," and it does not reference section "§ 1983" in its title. (*See generally* Dkt. 38, FAC at 20.) Thus, on its face, Count III of the FAC appears to remain a straightforward claim for civil conspiracy under Illinois law. Particularly since the Minor Children are represented by counsel, the Moving Defendants are reticent to afford this claim any additional gloss. Nevertheless, to avoid the risk of waiver, the Moving Defendants also assess Count III as though it asserted a § 1983 claim for federal conspiracy—the dismissal of which is appropriate for largely the same reasons as the state law civil conspiracy claim.

**a. Because Plaintiffs do not assert a viable underlying tort, the conspiracy claim—in either a state law or § 1983 manifestation—must be dismissed.**

Under Illinois law, civil conspiracy is not a standalone claim; it requires proof of an underlying tort. *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 612 (N.D. Ill. 2023). In other words, "[t]o state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). Notably, an agreement to perform a wrongful act is not a tort, even if it might be a crime. *Id*. Rather, "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Id*. The same goes for § 1983 conspiracy; Plaintiffs "must show an underlying constitutional violation" for the claim to proceed. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (citation and internal quotation marks omitted). Indeed, a plaintiff asserting a § 1983 conspiracy claim must allege facts which permits the court to infer that there was "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

Yet the only claim against the Moving Defendants is for conspiracy, meaning that said claim can only survive if some other coconspirator has been successfully implicated in a viable underlying tort. Here, that alleged coconspirator is Elster; as laid out above, Plaintiffs' conspiracy allegations against the Moving Defendants are confined to incidences involving each other and Elster; none of the other codefendants are implicated in the alleged conspiracy to which the Moving Defendants purportedly participated. (*Supra* at 3–4.)

9

As against Elster, Plaintiffs bring four direct liability claims: Count IV for unfair notice; Count V for negligence; Count VI for abuse of process; and Count VII for intentional infliction of emotional distress. (Dkt. 38, FAC ¶¶ 89–102.) The Moving Defendants hereby incorporate the Beermann Motion's arguments concerning the inadequacy of these claims as if fully stated herein. (Dkt. 53, Beermann Mot., "Count IV Fails," "Count V Fails, " "Count VI Fails," "Count VII Fails".)

Should the Court dismiss the aforementioned claims as concerns Elster, the conspiracy claim against the Moving Defendants must be dismissed, too, because no independent tort underlying the conspiracy survives. *See Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022) (affirming dismissal of Illinois civil conspiracy claims because "plaintiffs failed to state an independent cause of action underlying the alleged conspiracy"); *Campos v. Cook County*, 932 F.3d 972, 975, 977 (7th Cir. 2019) (affirming dismissal of § 1983 conspiracy claim because plaintiff did not "state[] an underlying claim for denial of a right").

### b.   Separately, Plaintiffs fail to plausibly allege an actionable conspiracy.

In Illinois, a civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998). This requires Plaintiffs to allege an agreement and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). Characterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss. *Buckner*, 694 N.E.2d at 571. Similarly, bald and conclusory allegations are insufficient to sustain conspiracy claims. *Id*. "A defendant who innocently performs an act which happens to

10

fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock*, 645 N.E.2d at 894.

Federal conspiracy is similar. To establish § 1983 conspiracy liability, a plaintiff must allege that "(1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) (citation and internal quotation marks omitted). The "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him" is "not enough" at the pleadings stage. *Cooney v. Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009).

Consistent with these standards, the Moving Defendants incorporate and adopt the Beermann Motion's civil conspiracy arguments as if fully stated herein. (*See* Dkt. 53, Beermann Mot., "All of Plaintiff's Claims Are Barred by the Litigation Privilege," "The 'State Actor' Claims Fail," "Count III Fails for Myriad Other Reason".) Next, the Moving Defendants supply additional context for why they, in particular, should be dismissed from this inappropriate civil conspiracy claim.

In conclusory fashion, Plaintiffs allege that Elster reached out to Levison to request that he "unlawfully intervene" into a criminal investigation against Kenton's ex-wife. (Dkt. 38, FAC ¶ 31.) Beyond that, Plaintiffs do not allege when, how, or the frequency with which Elster contacted Levison, what specific request(s) were made by Elster—beyond the boilerplate legal jargon of "unlawfully intervene"—the specifics of any conversation(s) between Elster and Levison including, what alleged "unlawful" intervention(s) were requested by Elster, how Levison responded to such request(s), or that there was ever any actual agreement reached between Elster and Levison to engage in the requested unlawful conduct.

Plaintiffs further allege that Levison put Elster in touch with Kathryn Ciesla, who arranged for a bribe to be delivered to the Glencoe Department of Public Safety. (*Id.* ¶ 32.) Again, Plaintiffs provide *zero* facts regarding the circumstances by which Levison or Elster are alleged to have engaged in any illegal or unlawful conduct; they merely allege that Ciesla arranged for a bribe. (*Id.*) As to the bribe, even assuming that allegation were true—that Ciesla arranged for a bribe—Plaintiffs fail to allege what that bribe was beyond "financial consideration" nor how Elster and/or the Moving Defendants had any direct knowledge of the bribe or involvement in the delivery of the bribe.

Further obfuscating the FAC's conclusory, cryptic allegations, Plaintiffs *actually do allege* that "Jane F. Girard and her counsel at Beermann LLP directed a bribe to be paid to Detective Ryan McEnerney of the Village of Glencoe in order to render a finding that the recommended criminal charges were 'unfounded,'" and that "Jane F. Girard and her attorneys at Beermann LLP appear to have greased the wheels of law enforcement to evade her criminal liability." (*Id*. ¶¶ 3–4.) Critically, **the Moving Defendants are *not* alleged to have been a part of this bribery scheme**. (*Id*. ¶¶ 3, 31–32, 34.)

Plaintiffs also claim that Levison spoke with Kiraly to ensure the police investigation would end with a finding of "charges unfounded." (*Id.* ¶¶ 32, 34.) While this (alleged) conversation would qualify as unsavory, Plaintiffs simply fail to set forth any specific facts that Elster and/or the Moving Defendants actually did anything illegal or unlawful, that there was ever an actual agreement amongst the trio to do so, or that they ever actually conspired to exert any influence over any investigation(s) involving Kenton's former wife. (*Id.* ¶¶ 31–32.) To that end, even if any criminal investigation(s) involving Jane Girard were ultimately adjudicated as "charges

12

unfounded," Plaintiffs fail to explain how or why such determination(s) were incorrect, unfounded, erroneous, or unlawful.

Rather than allege actionable facts, Plaintiffs litter the FAC with conclusory allegations that do not support civil conspiracy. Indeed, many of Plaintiffs' so-called "allegations" appear to serve no other purpose other than to harass, embarrass, annoy, and/or intimidate the Moving Defendants. (*E.g.*, *id*. ¶¶ 33 (discussion of Kiraly's purported personal finances), 35 (discussion of Levison's purported conduct at an Anti-Home Rule meeting on or about October 10, 2024).) These allegations, which have nothing to do with conspiracy, are stark examples of Plaintiffs' effort to misuse and weaponize the court system to personally attack individuals who have been sucked into the cyclone of Kenton's failed marriage.

Rather than allege well-founded facts sufficient to support civil conspiracy, Plaintiffs have trafficked in badmouthing and boilerplate, neither of which can survive Rule 12(b)(6). The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. Even a cursory review of the FAC reveals that Plaintiffs rely on conclusory, threadbare allegations, such that Count III should be dismissed, with prejudice, as against the Moving Defendants.

> **c. If the Court determines that Plaintiffs have only asserted a state law claim for conspiracy against the Moving Defendants, they are entitled to immunity.**

Furthermore, to the extent the Court determines that Plaintiff has only asserted a state law conspiracy claim against the Moving Defendants, they are entitled to immunity under the Illinois Tort Immunity Act, as "a public employee is not liable for his act or omission in the execution or

enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. When stripped of its inflammatory allegations against the Moving Defendants, the FAC is left with nothing more than the bald assertions that Levison encouraged Kiraly to have the Department of Public Safety back off and ensure the investigations end with a finding of "charges unfounded." (Dkt. 38, FAC ¶¶ 11,32.)

In other words, Plaintiffs are merely contending that the Moving Defendants—as Village Manager (Kiraly) and Commissioner (Levison)[7]—failed to enforce the law, an "omission" "in the execution of [the] law" plainly absent willful and wanton overtones, and thus clearly covered by immunity. 745 ILCS 10/2-202. *See Fitzpatrick v. City of Chicago*, 492 N.E.2d 1292, 1296 (Ill. 1986) (where, "at the time of his alleged negligence a public employee was engaged in a course of conduct designed to carry out or put into effect any law, an affirmative defense based upon section[] 2–202…of the Tort Immunity Act...should be available to the governmental employee") (internal citations omitted).

> **d. If the Court dismisses the federal claims, it should exercise supplemental jurisdiction and dismiss the state law conspiracy claim against the Moving Defendants, as well.**

Finally, if the Court dismisses Plaintiffs' purported federal claims, it has the discretion to adjudicate related state-law claims. *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018). Respectfully, Plaintiffs should not be permitted to continue to use the judicial system as a theater to assert meritless claims against individuals drawn into their web of ongoing domestic proceedings. Because considerations of judicial efficiency and avoiding the potential for duplication of judicial effort strongly support exercising supplemental discretion, should the

---

[7] Notably, 745 ILCS 10/2-202 is not limited to law enforcement activities performed by police officers. It instead applies to any and all public employees, and any act or omission by them, in the execution or enforcement of any law. *Albert v. Bd. of Educ. of City of Chi.*, 2014 IL App (1st) 123544, ¶ 31.

Court exit the federal claims, it should also dismiss Plaintiffs' state law conspiracy claim, for the reasons stated above, in lieu of relinquishing jurisdiction over said claim. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).

## CONCLUSION

WHEREFORE, Defendants Philip Kiraly and Bradley Levison respectfully request this Court grant their Motion to Dismiss the First Amended Complaint, with prejudice, and issue any other relief this Court deems appropriate.

Dated: September 5, 2025                          Respectfully submitted,

                                             /s/ Jeffrey R. Kivetz
                                             JEFFREY R. KIVETZ, Attorney No. 6308250
James G. Sotos                                   *One of the Attorneys for Defendants,*
Jeffrey R. Kivetz                                *Philip A. Kiraly and Bradley S. Levison*
James A. Kearney
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jkivetz@jsotoslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on September 5, 2025, I electronically filed the foregoing **Defendants Philip Kiraly and Bradley Levison's Motion to Dismiss Plaintiffs' First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

<u>***Pro Se Plaintiff***</u>
Kenton Girard
965 Forest Way Drive
Glencoe, IL 60022
773-575-7035
kg5252@yahoo.com

<u>***Attorney for Minor Plaintiffs, GR and GW***</u>
Toma Makedonski
**Law Office of Toma Makedonski**
1271 Old Mill Ct
Naperville, IL 60564
(773) 727-5491
Fax: Pro Hac Vice
legaltma@gmail.com

<u>***Attorneys for Defendants Judge Regina A. Scannachio, Judge Rosanna P. Fernandez, , Robert W. Johnson, Judge Wiliam Yu, and Judge Eileen M. O'Connor***</u>
Michael J. Bradtke
**Office of the Illinois Attorney General**
115 South LaSalle Street, 27th Floor
Chicago, IL 60603
(224) 278-8343
Michael.bradtke@ilag.gov

<u>***Attorneys for Defendant Matthew Elster***</u>
Kimberly E. Blair
Robert F. Merlo
**Wilson Elser Moskowitz Edelmann & Dicker, LLP**
55 West Monroe Street, Suite 3800
Chicago, IL 60606
(312) 812-6139
kimberly.blair@wilsonelser.com
robert.merlo@wilsonelser.com

<u>***Attorney for Defendant, Jane F. Girard***</u>
Eric D. Kaplan
Chris S. Wunder
**Kaplan & Gournis, LLP**
180 N. LaSalle St.
Suite 2108
Chicago, IL 60606
(312) 726-0531
ekaplan@kpglaw.com
cwunder@kpglaw.com

/s/ Jeffrey R. Kivetz
JEFFREY R. KIVETZ, Attorney No. 6308250
*One of the Attorneys for Defendants*
*Philip Kiraly and Bradley Levison*