

FILED
10/13/2025
AXM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MINOR CHILD GW,
MINOR CHILD GR, and
KENTON GIRARD,

          Plaintiffs,

          v.

JUDGE REGINA A. SCANNICCHIO,
JUDGE ROSSANA P. FERNANDEZ,
JUDGE WILLIAM YU,
JUDGE ROBERT W. JOHNSON,
JUDGE EILEEN M. O'CONNOR,
PHILIP A. KIRALY,
BRADLEY S. LEVISON,
JANE F. GIRARD,
MATTHEW D. ELSTER,
ENRICO J. MIRABELLI, and
BEERMANN LLP,

          Defendants.

Civil No.     1:25-cv-04551

District Judge Edmond E. Chang

**Plaintiffs' Combined Opposition to
Motions to Dismiss of Defendants
as to First Amended Complaint (FAC)**

     Plaintiffs Minor Child Gw, Minor Child Gr, via their counsel Toma Makedonski Esq, and Kenton Girard in pro se, for their combined opposition to the motions to dismiss filed by the defendants hereunder hereby state as follows:

**I.     The minor children are properly before the Court.**

     District Judge Edmond Chang approved the pro hac vice application of Attorney Toma Makedonski hereunder, wherein he represents the minor children plaintiffs. Dkt[43] and Dkt[44]. They are joined by their father Kenton Girard who is co-Plaintiff hereunder in satisfaction of the "next friend" requirements articulated under FRCP 17.

     It is shameful that the Attorney General, who has entered his appearance on behalf of the Judicial Defendants, refuses to acknowledge this fact in his motion to dismiss. Dkt[52] at p. 3. In

any case, the twin minor children attain majority age in just fifteen weeks, at which point the "next friend" arguments are mooted. One cannot help but ascertain a denigrating attitude towards the serious nature of the claims wherein the Attorney General attempts to hang his hat on a fictitious "next friend" violation in this matter. Same goes for the co-opting of the same baseless argument raised or referenced by the Beermann Defendants and Defendants Kiraly and Levison. Dkt[53] at pp. 5-6, Dkt[55] at p. 5.

## II.     The domestic relations exception is not availing.

Only Defendants Jane F. Girard and the Beermann Defendants have opined that the domestic relations exception to federal jurisdiction precludes this suit. Dkt[53] at p. 13, Dkt[54] at p. 3. However, as the Seventh Circuit has recently instructed: "The domestic-relations exception applies when a litigant asks a federal court to provide one of the unique forms of relief associated with domestic relations (e.g., a decree regarding divorce, alimony, or child custody), *see Ankenbrandt v. Richards*, 504 U.S. 689, 706-07 (1992); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998), or when the issue raised by the litigant in federal court is ancillary to the domestic-relations proceedings in state court, *see Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006); *Friedlander*, 149 F.3d at 740. *Sheetz v. Norwood*, No. 14-1732, 3-4 (7th Cir. 2015)

Here, importantly, Plaintiff *is not seeking review of any court orders or decisions* involving the granting of divorce, decrees of alimony or child custody orders. The state court has yet to rule thereunder, so there is no decision or order prospectively available for review. Instead, this lawsuit seeks relief from the corrupt actions of the Defendants. Even if a pleading were to sprinkle in causes of action of a "domestic relations" variety, the Seventh Circuit has argued for federal jurisdiction:

> Unsure that there is federal jurisdiction, we express no view of the merits of any of the claims but add that if there is at least one colorable federal claim not barred by the probate exception, the district court has jurisdiction" *Jones v. Brennan*, 465 F.3d 304, 308-9 (7th Cir.

2006)

In case of any doubt, the *Sheetz* decision provides granular context which is applicable for the purposes of concluding that the instant pleading passes jurisdictional muster:

> But although Sheetz refers to those orders as "void" throughout his complaint, he is principally attempting to litigate misconduct that occurred *outside* the state-court proceedings—the alleged failure of the defendants to report or otherwise end the alleged abuse inflicted on Sheetz by his father. He can pursue those claims without asking to set aside the state court's orders; his claims are analogous to the tort claims that the Supreme Court has held are not barred by either the domestic-relations or probate exceptions. *See Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006); *Ankenbrandt*, 504 U.S. at 704; *see also Struck*, 508 F.3d at 860. *Sheetz v. Norwood*, No. 14-1732, 4 (7th Cir. 2015)

Under this lens, to the extent that Plaintiff has cried foul about the goings-on inside the courtroom as to the post-decree proceedings (herein, "custody case") under *IRMO Girard*, Cook County Case No. 2015-D-009633, the wrongdoing at the heart of the FAC involves misconduct and wrongdoing which did not invoke the subject matter jurisdiction of the state court or otherwise did not invoke judicial acts as explored in more detail *infra*.

However, even more powerfully, Illinois Supreme Court Rule 922 emplaces a time limit of eighteen (18) months on custody proceedings. The underlying post-decree proceedings were initiated by Jane F. Girard in May 2022; those proceedings are now entering month number forty-four (44). In other words, two and one half times the statutory time limit has been blown. The only way to circumvent such a time limit is to obtain a written finding of good cause to extend from the state court, involving the child representative. Here, however, the state court proceedings have been without a child representative since August 2024. Fatally, Beermann LLP has never sought such an extension. As a result, the domestic relations "claims" in the state court proceeding are null and void.

Incidentally, there are no such "claims" because no pleadings have been filed by Jane F. Girard in the custody case – in abrogation of the constitutional right to fair notice of claims. FAC

at ¶¶56, 70. Indeed the Trial Order prepared by Defendant William Yu and dated February 14 2025 references only motions, no pleadings and the "mystery trial" sought by Jane F. Girard's attorneys from Beermann LLP has been characterized by Defendant Mirabelli *as a criminal contempt trial*. FAC at ¶56.

### III.    Subject matter jurisdiction is wanting for acts taken by Judicial Defendants.

As the Judicial Defendants have pointed out (Dkt[52] at p. 7), judicial immunity materializes for judicial acts taken in the presence of subject matter jurisdiction. *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) Only such acts invoke the possibility of *judicial error*, which is not redressable in this Court, as recently confirmed under *Myrick v. Greenwood*, 856 F.3d 487, 487 (7th Cir. 2017). Constitutional torts caused by nonjudicial acts or by acts taken without subject matter jurisdiction are affirmatively redressable in this Court.

Here the complained of wrongdoing by the Judicial Defendants was undertaken in the sheer absence of subject matter jurisdiction as explained *infra*. The Seventh Circuit recently propounded a landmark decision under which the activities of two judges were reviewed and one of those (Boliker) was determined to be lacking the protection of judicial immunity. "Although judicial immunity is broad, it is not limitless… A judge does not enjoy immunity if he or she is acting in the "clear absence of all jurisdiction"... **A judge is also amenable to suit for non-judicial acts.**" (emphasis added) *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018)

It is a principle that traces back to baronial England that once a judge transfers jurisdiction, from that moment she loses subject matter jurisdiction. Here, Cook County Judge Rossana P. Fernandez granted a petition seeking her removal in open court on October 18 2024. At such a point in time her recusal was operative. However, Defendant Fernandez subsequently "changed" her ruling and proceeded to conduct an entire case management conference,

producing a case management order which has governed the custody case since (FAC at ¶48). All further rulings in the custody case post the recusal of Hon. Fernandez must therefore be unwound for voidness.

Continuing, wherein proceedings are terminated, subject matter jurisdiction has also evaporated. On December 20 2024, Plaintiff Kenton Girard filed a notice of termination under DWP in the custody case (FAC at ¶96). All further rulings in the custody case post the termination on December 20 2024 must therefore be unwound for voidness.

Furthermore, Cook County Domestic Relations Presiding Judge Regina Scannicchio lost judicial transfer orders between Calendar 1 and Calendar 51 and never filed those transfer orders on the docket. FAC at ¶¶54-55. Subsequently, Hon. William Yu knowingly disregarded such irregularities and proceeded to issue his own Trial Order on February 14 2025, wherein his Trial Order does not even attempt to reference a single pleading for the then-scheduled May 1-2 2025 "mystery trial". FAC at ¶56.

Egregiously, when the custody case was removed in its entirety on April 28 2025 by Marissa Girard[1] to federal court pursuant to 28 U.S.C. § 1443, federal jurisdiction was exclusive. Unbelievably, Hon. Robert W. Johnson proceeded to conduct court dates and sign orders on April 29 2025 and May 1 2025 wherein the faces of the orders acknowledge the utter lack of state court jurisdiction. FAC at ¶68. Indeed, the Seventh Circuit has noted that *any activity in the state court* pending removal to federal court is strictly forbidden under *Fenton v. Dudley*, 761 F.3d, 3

---

[1] Plaintiff Kenton Girard's wife Marissa Girard is neither a biological parent nor a party to the Joint Parenting Agreement as to the minor children. On this basis alone she should not have been joined as a defendant in the custody case. However, what is worse, at the time of her (deficient) joinder she was not actioned with a pleading in violation of 735 ILCS 5/2-201(a). In brief, Marissa has been subjected to 31 months of literal abuse including more than twenty motions seeking her jailing or fining by the Beermann Defendants in the custody case, and for those reasons she is pursuing their liability under abuse of process and other causes of action in a separate legal proceeding, namely *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, pending before District Judge Andrea Wood. Many of the defendants in that matter are defendants in this matter.

770, 773 (7th Cir. 2014) wherein state court proceedings on removal violate 28 U.S.C. § 1446(d).

However likely the worst offense of all took place wherein Hon. Eileen M. O'Connor sanctioned Plaintiff Kenton Girard under Illinois Supreme Court Rule 137 for **filing his pleadings under the instant federal forum**. FAC at ¶74. Federal and state courts are separate sovereign systems: it is a basic tenet of federalism that a state judge may not operate the gates to federal courts, much less issue sanctions for federal papers filed in federal court[2]. Indeed, the ability to file a lawsuit in federal court implicates the sacred constitutional right to a remedy. The grotesque affront to federal jurisdiction by Defendant O'Connor is a siren call for this Court to take action to preserve the sanctity and exclusivity of its control over its own affairs and dockets. There is simply no way to rationalize or explain her decision to assert dominion over this Court's docket. *Put differently, the integrity of the federal courts have been harmed by her corruption.*

In case of any doubt about Defendant O'Connor's corrupt motivations, at the same time the Beermann Defendants are accused of violating the Civil RICO statute under *Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois wherein they have systematically engaged in a long-running racketeering pattern of favor trading in the Cook County Domestic Relations Division paying off judicial officers and family court functionaries in exchange for favorable rulings for their clientele.

Via Defendant O'Connor's ruling there is money flowing to the RICO defendants in retaliation for filing the instant lawsuit, proving the conspiracy between Beermann LLP and

---

[2] In what can only be described as an admission of guilt, Defendant O'Connor immediately recused herself from presiding over Plaintiffs' state court proceedings when Mr. Girard alerted her to the federalism-violating nature of her perverted application of Illinois Supreme Court Rule 137 in the absence of an offending paper.

*Plaintiffs' Combined Opposition to Motions to Dismiss*

judges. District Judge Rebecca Pallmeyer, moreover, per her memorandum opinion[3] published on August 12 2025 has greenlighted the Civil RICO case to advance against the Beermann Defendants as soon as the custody case is over (respecting the *Woodard* doctrine) and specifically emphasized that accepting a bribe is not a judicial act. **Exhibit 1**.

Incidentally, the Defendants have openly painted Plaintiff Kenton Girard as a vexatious litigant[4] without foundation: quite the reverse, District Judge Pallmeyer has blessed his Civil RCIO theory inviting him to re-file as soon as the custody case is over.

## IV.     Defendant Hon. Regina Scannicchio is a judge by name only.

If we look to see what constitutes judicial discretion and the judicial function, the job duties of Cook County Domestic Relations Presiding Judge Regina Scannicchio fall outside of the category. Her singular role is the allocation of judicial officers to cases pending in the Domestic Relations Division of the Cook County Court System. She does not make rulings on the merits, and she does not preside over even a single case in the Domestic Relations Division.

Judicial acts are distinct from the "administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." *Forrester v. White*, 484 U.S. 219, 226, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Three factors generally govern whether a particular act or omission is entitled to judicial immunity: (1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge; (2) whether the act is normally performed by a judge; and (3) the expectation of the parties, i.e., whether the parties dealt with the judge as a judge. *Dawson v.*

---

[3] District Judge Pallmeyer's ruling presents a stark contrast to the vast majority of Civil RICO lawsuits brought in this District – she encourages the Plaintiffs to re-file their claims against the Beermann Defendants as soon as the custody case is over, wherein no more "interference" with a state court proceeding is possible.

[4] See Dkt[53] at pp. 1, 3, 14; Dkt[54] at p. 1.

*Newman*, 419 F. 3d 661 (7th Cir. 2005) Applying these principles, none of Defendant Scannicchio's job duties – indeed none of her actions connected with the instant factual backbone – involve the exercise of discretion or judgment. Her actions are outside of the purview of judicial immunity.

Moreover, the historical purpose of judicial immunity is clearly inapplicable to Defendant Scannicchio, who at all times in question served in her purely administrative capacity tasked with assigning available judicial officers to family court cases. "Judicial immunity arose because it was in the public interest *to have judges who were at liberty to exercise their independent judgment about the merits of a case* without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." (emphasis supplied) *Dennis v Sparks*, 449 U.S. 24 (1980). Under the reasoning raised by the Supreme Court, a mere allocator of judicial resources (regardless of her title) does not exercise her independent judgment about the merits of any case.

## V.     *Hadzi-Tanovic* **provides a helpful framework to evaluate abstention.**

A recent proceeding before this District offers some structural pleading similarities with respect to the pleading under the instant matter:

> In October 2014, Slobodan Pavlovich filed proceedings for dissolution of marriage against his then-wife Aneta Hadzi-Tanovic in the Circuit Court of Cook County, Illinois. Throughout the proceedings, Hadzi-Tanovic and Pavlovich engaged in a heated custody battle. Each parent accused the other parent of abusing the minor children. Hadzi-Tanovic and Pavlovich agreed to equal parenting time in an agreed order that the state court entered on February 26, 2015. That order did not end the parties' dispute over parenting time and custody, however.

> In this case, Hadzi-Tanovic is suing Pavlovich, [DCFS rep] Pasulka, and [family court] Judge Johnson. She brings two conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985(3). She also brings state law claims for abuse of process and intentional infliction of emotional distress. She alleges that the defendants conspired to deprive her of her parental rights and her children of their rights to familial association under the Due Process Clause of the Fourteenth Amendment.

> Judge Johnson's motion invokes several doctrines in support of dismissal for lack of subject-matter jurisdiction-namely, the domestic-relations exception to federal jurisdiction… and

the *Younger* abstention doctrine. None of the doctrines the motion relies upon, however, deprive this Court of subject-matter jurisdiction or otherwise warrant dismissal of the plaintiff's claims. *Hadzi-Tanovic v. Johnson,* 20-cv-03460, 2, 5-6 (N.D. Ill. Nov. 24, 2021)

Similar to Hadzi-Tanovic, the gravamen of the instant matter is Plaintiffs' quest for relief owing to injuries sustained by an array of officers of the Cook County family court at the direction of the corrupt law firm Beermann LLP and its client Jane F. Girard. Both suits complain about corruption in Cook County family court proceedings, and both suits are inappropriate for abstention under either the domestic relations carve-out[5] or *Younger*[6].

However, the similarities end there. Whereas Hadzi-Tanovic emplaced before this District Court the task of examination and criticism of the state court's application of family law, Plaintiff here does not make any remotely similar request. Furthermore, the Judicial Defendants neither preside over the state court proceedings or have been removed therefrom with the singular exception of Hon. William Yu. However, even as to Defendant Yu, he was re-installed under the custody case proceedings after Defendant Robert W. Johnson disregarded the statutory requirement of adjudication of a petition seeking his own removal for cause by a separate judge in order to clear Defendant Yu as to his own petition. **Exhibit 2**.

---

[5]This District confirmed that Hadzi-Tanovic falls within the corruption exception to domestic-relations abstention in 2021:

Her alleged injury stems not from the state court orders but from the alleged conspiracy. And to the extent that Hadzi-Tanovic's claims do ask this court to review the orders and apply Illinois family law to determine damages, **her claims fall under the corruption exception and are not barred**. (emphasis added) *Hadzi-Tanovic v. Johnson*, 20-cv-03460, 6, 8 (N.D. Ill. Nov. 24, 2021)

[6] It should be noted, however, that the Seventh Circuit issued a landmark ruling just last year that there is no corruption exception to *Rooker-Feldman*, thereby reversing the District Court. In its ruling it found that Hadzi-Tanovic moreover did appeal from a final judgment in fact:

The challenged state court judgment in this case was "rendered before the district court proceedings commenced," so that Hadzi-Tanovic was a "state-court loser." Judge Johnson issued his order requiring that her parenting time be supervised on June 13, 2018. Hadzi-Tanovic filed a notice of appeal, but the Illinois appellate court dismissed her appeal for want of prosecution on January 13, 2020. Judge Johnson's order was therefore final well before Hadzi-Tanovic filed this federal lawsuit on June 12, 2020. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399-0 (7th Cir. 2023)

*Plaintiffs' Combined Opposition to Motions to Dismiss*

Furthermore, Plaintiff Kenton Girard filed motion to terminate the proceedings in the custody case, and such paper was scheduled for presentment before Defendant Yu on October 3 2025. However in yet another subversion of justice, as of the date of this filing, Defendant Yu refuses to issue a ruling thereunder. With termination of the custody case in hand, the instant discussion about federal abstention would be mooted.

As highlighted above, the domestic relations "claims" are null and void. Such facts imply that there are no cognizable comity and federalism grounds to support abstention here because adjudication of the claims before this Court does not threaten to influence or otherwise manipulate the underlying family court proceeding. Finally and notably, *Hadzi-Tanovic* implicates federal review of a final order concerning parenting time entered by the presiding family court judge *nearly two years before* the pleading was filed. By contrast, Plaintiff Kenton Girard has repaired to this District Court before the underlying family court has ruled upon custody modification. Furthermore, no such ruling shall be forthcoming because of the time bar under Illinois Supreme Court Rule 922.

Furthermore, Jane F. Girard has been divested of a judicial custody remedy because of her Fifth Amendment allocation on September 7 2023 (FAC at ¶¶5-7,72) under questioning by Prosecutor Mary Stein from the State's Attorneys Office. Jane F. Girard's "claims" are a nullity for the separate reason that she has not reduced them to pleadings, whether against Kenton Girard or Marissa Girard, in violation of the constitutional right to fair notice of claims.

## VI.    *Younger* **and** *Rooker-Feldman* **also fail here.**

*Younger* does not operate to preclude the claims against the Defendants. Instead, *Younger* abstention only applies to the very narrow category of state civil proceedings which are akin to criminal prosecutions, or implicate a state's interest in enforcing the orders and judgments of its

courts. Indeed, the Supreme Court under *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013) has recently reaffirmed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," citing to *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (*NOPSI*).

Here, the instant proceedings do not touch on the Cook County family court's ability to perform its judicial function. The custody case post-decree proceedings were initiated by Jane F. Girard, not by the State of Illinois. Neither does the instant matter trace its origins to any sort of administrative action, wrongdoing investigation, contempt proceeding, or enforcement matter initiated by the State of Illinois. Neither does a state actor count among the parties in the underlying family law proceedings. Supreme Court Justice Ruth Bader-Ginsburg provides powerful guidance applicable here:

> We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI*, 491 U.S., at 368, 109 S. Ct. 2506, 105 L. Ed. 2d 298.

> Circumstances fitting within the Younger doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)

The modern jurisprudence under *Rooker-Feldman* traces to *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005) The facts are simple here: Jane F. Girard initiated the underlying family court proceedings ostensibly in order to modify a 50-50 custody order. There is no trial date set at this time. Plaintiff is accordingly not a loser under a state court judgment.

Even if *arguendo* the Court were to accept the argument that case management orders promulgated on October 18 2024 by Hon. Fernandez, on December 3 2024 by Hon. Fernandez

and on February 14 2024 by Hon. Yu constitute final orders or judgments and therefore Rooker Feldman is not off the table (Dkt[28] at pp. 4-5), a closer look at the state court proceeding provides clarity. Hon. Fernandez divested herself of subject matter jurisdiction in the court date on October 18 2024 – specifically before propounding a case management order. Therefore that order was extra-judicial and lacking the force of law. Simply put, it is not a judicial "order" or a "judgment". Because the judicial transfer orders from January 14 2025 and January 23 2025 remain missing and unfiled on the docket (FAC at ¶55), the jurisdiction of Calendar 89 (Judge Yu's courtroom) is in question. Therefore his orders aforedescribed also do not constitute judicial "orders" or "judgments".

The Defendants have misapprehended the notion that a District Court must abstain when there is a parallel underlying state proceeding. As legendary Supreme Court Justice Ruth Bader-Ginsburg has articulated: "This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' *McClellan* v. *Garland*, 217 U. S. 268, 282 (1910); accord *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 928 (1975); *Atlantic Coast Line R. Co.*, 398 U. S., at 295." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005)

### VII.    The exercise of jurisdiction here does not intrude on a state proceeding.

Finally, one of the most important guideposts for a District Court's introspection into the appropriateness of abstention is whether exercising jurisdiction would intrude on state court proceedings, in a generalized affront to federalism. Contemporary guidance as to what constitutes "intrusion" on the state courts was dispensed by the Seventh Circuit under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021):

> [The plaintiff] cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—**to use a favorable federal court**

> **judgment in state court to influence the state judge**'s parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest. (emphasis added)

As previously noted, the FAC does not request involvement by this court in any of the domestic relations determinations in the underlying family court proceeding, and the domestic relations "claims" are null and void and time-barred at this time.

In case of doubt, with the exception of William Yu, the Judicial Defendants either do not currently preside or have been removed from those proceedings and therefore any adverse ruling would not have any bearing on the actions of the purported current judicial officer William Yu. The other Judicial Defendants also have been removed from involvement with the state court proceedings.

The nature of the instant matter before this Court does not implicate "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support", and therefore does not even possess a "domestic relations" look or feel under the verbiage espoused by the Seventh Circuit under *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). As a result, on this basis alone, it is a stretch to conclude that litigating civil rights and ADA claims would implicate unacceptable influence of the state court custody proceedings.

Ultimately, the instant case, structurally, is akin to *Hadzi-Tanovic* minus any request for review of a ruling of a distinctive domestic relations character. The only living, breathing claims in the custody case are the TP Claims filed by Marissa Girard on March 5 2025 and the recently filed declaratory judgment cross claims filed by Kenton Girard, the latter which resulted in Marissa Girard's filing of a Notice of Removal of the custody case wherein it moved to the court of District Judge Jeremy C. Daniel under Civil Action No. 1:25-cv-04586 as of April 28 2025.

After District Judge Daniel ordered a remand a few weeks later (although the remand

*Plaintiffs' Combined Opposition to Motions to Dismiss*

order to the state court still has not been certified being that the 35 or so docket entries which accumulated under District Judge Daniel still have not been transmitted to the state court), Marissa Girard appealed his ruling to the Seventh Circuit, which refused to review the remand decision as required pursuant to 28 U.S.C. § 1443(1), under which Marissa's civil rights as a Hispanic/Latinx person were at issue. Upon denial of panel rehearing in early August 2025, Marissa mailed an application to SCOTUS on August 25 2025 seeking a briefing schedule under a forthcoming petition for certiorari. Wherein Supreme Court Justice Amy Coney Barrett set a briefing schedule for the petition for certiorari (due December 5 2025) from Marissa Girard, under Case Number 25A237, SCOTUS is going to be deciding the justiciable controversies in the custody case, the custody case proceeding is decidedly federal in character. **Exhibit 3**.

## VIII.   Other forms of abstention do not save the Defendants, either.

"Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them. The Supreme Court has recognized four main categories of abstention named after the cases that gave rise to them: *Pullman, Burford*[7], *Younger*, and *Colorado River*[8]*." SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th

---

[7] *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098 (1943) was about the tension between slow-moving federal proceedings and the Texas oil industry, and the indefatigable public interest in oil and gas which is complex state concern very effectively serviced by a vast and nimble array of State of Texas specialists. The abstention principle which is the legacy of Burford is for the federal judiciary to stand down wherein complex public interests are more efficiently and coherently served by state proceedings which specifically call upon an array of state specialists dedicated to resolving problems within their domain.

[8] To quote in relevant part from *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 804-5 (1976): "Under the Colorado Act, the State is divided into seven Water Divisions, each Division encompassing one or more entire drainage basins for the larger rivers in Colorado… Water Referees in each Division rule on applications for water rights filed within the preceding five months or refer those applications to the Water Judge of their Division… A State Engineer and engineers for each Division are responsible for the administration and distribution of the waters of the State according to the determinations in each Division." Abstention under *Colorado River* favors unified adjudication of rights wherein state systems have been designed for making such allocations mindful of the effect on others. It differs facially from *Burford* wherein the motivating concern is that determining the rights of one so-affected party affects the rights of all others. Dispute resolution inherently should involve the state allocation system, which can only be done via the state courts.

Cir. 2010) Contemporary guidance as to what constitutes "intrusion" on the state courts was dispensed by the Seventh Circuit under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021):

> [The plaintiff] cannot compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute. Yet that is precisely what is going on. [The plaintiff] came to federal court to go on the offensive—to use a favorable federal court judgment in state court to influence the state judge's parenting time decisions. Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest.

The analysis under *Burford* is simple: there is no complex state question implicating significant public interest concern under the instant matter; neither is there a well developed state apparatus designed to achieve consistent results as to resolution of claims such as here . Quite the contrary, the civil rights and ADA causes of action implicate important federal questions for which the state court is not suited to achieve a just resolution, much less a result consistent with federal jurisprudence. This District reminds us of the contours of *Burford* jurisprudence in the Seventh Circuit:

> *Burford* abstention is appropriate in two situations. First, federal courts should abstain from **deciding difficult questions of state law** bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. We should also abstain from the exercise of federal review that would be disruptive of state efforts to establish a **coherent policy with respect to a matter of substantial public concern**. (emphasis added) *Hanna v. City of Chicago*, 212 F. Supp. 2d 856, (N.D. Ill. 2002)

As to the operation of *Colorado River*, the Seventh Circuit gives great weight to avoiding piecemeal litigation and efficiency. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1022 (7th Cir. 2014) (quoting *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 756 (7th Cir. 2006)). When "the state and federal forums have substantially the same parties before them and are litigating substantially the same issues arising from the same set of facts," courts in the Seventh Circuit are inclined to abstain under *Colorado River*. *Id.* The analysis can  stop there: the "same parties"

requirement is not even remotely satisfied between the instant matter and the underlying custody case[9].

## IX.     Abuses of constitutional rights cautions against dismissal.

Under the FAC, a number of serious varieties of violations of constitutional rights have been adduced including <u>inter alia</u> violations of the First Amendment, the right to a remedy, the right to fair notice of claims.

In the instant matter, Defendant Cook County Judge Eileen M. O'Connor literally closed the doors to federal court wherein she awarded a sanction under Illinois Supreme Court Rule 137 against Plaintiff Kenton Girard for filing the pleadings hereunder. This is an absolutely unacceptable and wholly untenable situation: failure to take action against Hon. O'Connor will invite more ostentatious disregardment of federal jurisdiction going forward.

The Supreme Court has taken care to ensure that the doors to federal courts remain open when there are powerful reasons to believe that state courts will not protect federal constitutional rights. For example, in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed. 2d 22 (1965), African-American plaintiffs sued in federal court to block state prosecutions in a state court system that were chilling protected First Amendment expression, and there was reason to question the good faith of the state. *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 680 n.5 (7th Cir. 2010) Here, one need not look further than Defendant O'Connor's flagrant disrespect for the authority and jurisdiction of the federal courts and Defendant Johnson's convening of court dates and signing of court order when District Judge Jeremy Daniel was presiding over the custody case proceedings.

---

[9] Although not relevant for our immediate purposes, the abstention analysis under *Colorado River* in the Seventh Circuit evaluates ten (10) factors. *Freed* at 1021. Finally, the Seventh Circuit has explicitly instructed that lower courts should stay, rather than dismiss, proceedings under the doctrine. *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002)

The situation here is similar: the now-recused Judicial Defendants denied Plaintiff access to federal court and knowingly abused Plaintiff's constitutional rights by forcing him to endure the state court proceedings in spite of having been long terminated, whether from the perspective of the termination under DWP on December 20 2024 or the contumacious timing out under Illinois Supreme Court Rule 922. As in *Dombrowski*, Plaintiff has made a preliminary showing that the Cook County family court does not exercise prudential care for his constitutional rights.

## X.     The negligence claim brought under the auspices of Section 1983 is viable.

Insofar as the Judicial Defendants and the Beermann Defendants (officers of the court acting under color of state law) have an obligation to uphold the law – including the scope of protections enshrined under the Illinois Crime Victims Bill of Rights and the fundamental rights of crime victims as constitutionally protected under the Ninth Amendment – they have violated this duty. Such violation has proximately caused both economic and non-economic damages to be sustained by Minor Child Gw and Minor Child Gr.

On the one hand, the Beermann Defendants argue that they have not acted under the color of state law. Dkt[53] at p. 8. Such a proposition is obviously false: the Beermann Defendants are responsible for kicking off the post-decree proceedings and for scheduling the vast majority of court dates and motions for presentment in the history of the custody case. Furthermore, the welfare and safety of the minor children has been hanging in the balance: in August 2022 the minor children fled their sex abuser's home and have not looked back since. As the legal representation for the sex abuser mother – and bound by statutory obligations under the IMDMA (codified under 750 ILCS 5/1 et seq.) under which the welfare and well-being of the minor children is to be treated as the paramount concern at all times, the Beermann Defendants have absolutely facilitated the custody case proceedings which implicate extremely serious possible

consequences involving the minor children's forced reunification with their documented sex abuser.

It would be one thing to state that an attorney has no duty to the opposing party, and indeed there is authority supporting such thinking under various Illinois Appellate Court decisions. However, it is ** quite another thing ** to aver that the Beermann Defendants have no duty to to the minor children who are ** not ** parties under the custody case, but whose well-being and welfare is the paramount concern under the requirements of the IMDMA which unequivocally binds the Beermann Defendants as family law practitioners.

Dancing around, the Beermann Defendants also assert there is no private right of action under the Illinois Crime Victims Bill of Rights. Dkt[53] at pp. 10-11. Plaintiffs agree, however note that the count in question is structured as a negligence cause of action. Such a pleading construction is well understood where duties arise under the criminal code: a criminal can be sued for negligence for precipitating economic and non-economic harms for breaching his duty to uphold the criminal laws, although lacking a private right of action under the criminal code.

## XI.     The abuse of process claim is substantiated.

The only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 966 (1972). In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 183 (2003).

The Beermann Defendants attempt to "split hairs" wherein they float a very narrow meaning of "process" instead of its more plain meaning as encompassing the processes and procedures followed (here, under the custody case). It is rather pathetic attempt to evade liability for goading the dozen or more judicial officers in the custody case via their monstrous disregardment for statutory time limits, termination of the proceedings under DWP and even the divestiture of their client's ability to seek a judicial custody remedy after her Fifth Amendment allocution under questioning by Prosecutor Mary Stein in September 2023. There is nothing normal or customary about pushing custody proceedings on behalf of a sex abuser mother for 44 months without relenting.

It is without doubt that Beermann LLP's purpose in persisting the proceedings in the custody case has been to line their coffers and to cause mental anguish and torment for the Plaintiffs, and to aggressively defend their client Jane F. Girard from the actual filing of criminal charges for her long-running sex abuse of the minor children using the well-known "DARVO" tactic used by perpetrators to evade accountability by denying wrongdoing, attacking the accuser, and reversing the roles of victim and offender. It is harassment *per se* when a law firm attempts to force reunification of the minor children with their sex abuser mother.

## XII.   The IIED claim is justified.

The foundation for the IIED claim is established in great part by the abuse of process claim: without question the Beermann Defendants intentionally and relentlessly advanced the proceedings under the custody case with reckless disregard for the emotional and mental well being of the minor children, thereby spitting on their obligations under the IMDMA to treat the welfare and well-being of the minor children as the paramount concern under the proceedings.

Their abuse of process and vexatious goading of the judicial officers to break the law and

violate statutory protections at every turn is nothing short of extreme and outrageous and as a result the minor children have been receiving therapy from their psychologists for managing the impossible mental and emotional toll of being prisoners to these never-ending proceedings which more closely resemble a criminal conspiracy than the actions of a court of law.

## XIII.   Civil conspiracy is plain.

To establish a conspiracy, a plaintiff must show that two or more persons acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means. *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983). The FAC gets straight to the point with the requisite articulation of facts: "Mr. Elster is friends with [Defendant Levison]. In turn, Mr. Levison – who plays a significant role in the governance of the Village of Glencoe as a commissioner – has leveraged his influence over Village Manager Philip A. Kiraly in order to lean on the Department of Public Safety to back off the [various criminal investigations of Jane F. Girard]." FAC at ¶11. Such does not constitute a "conclusory statement" but rather a statement of fact compliant with FRCP 8(a).

The Beermann Defendants have taken issue with the friendship between Defendants Elster and Levison not receiving sufficient articulation. The pleading points out they (a) are fellow University of Illinois alumni, and (b) dine out together at Guildhall Restaurant and socialize together at the Glencoe Golf Club. FAC at p.6, n. 1. Such detail suffices.

Defendant Elster reached out to Defendant Levison around July 2023 with the specific request that Mr. Lesion put an end to the criminal investigation of Jane F. Girard for her long-running sex abuse of the minor children. In turn, Defendant Levison arranged for Kathryn Ciesla to convey a bribe to the Glencoe Police Department. FAC at ¶¶31-32 and to confirm via checking with Defendant Kiraly that the Glencoe Police Department had received sufficient consideration for ending the criminal investigation in Jane F. Girard's favor.

If this were not enough, details are presented about the same triumvirate using their powers to terminate the Apple Air Tag criminal investigation of Jane F. Girard in her favor around April 2024, wherein Defendant Levison again relied on Defendant Kiraly to smooth over the Glencoe Police Department. FAC at ¶34. Bribery and obstruction of justice are obviously overt, wrongful acts. The triumvirate agreements are simple yet satisfy the elements of civil conspiracy which when indirectly raised often fail at trial. For example, under *Rodarmel v. Pneumo Abex, LLC,* 957 N.E.2d 107 (2011), the Illinois Appellate Court found that evidence of parallel conduct, by itself, is insufficient to establish the existence of an agreement to commit a civil conspiracy.

To the extent successful prosecution of this count requires adducing more granular evidence, that is the purpose of discovery and depositions and trial preparation. It would be premature to dismiss this count, wherein at this stage of the litigation the articulation under the complaint is to be credited with the credence of truth for the purposes of evaluating pleading sufficiency. Defendants cannot achieve dismissal here merely by invoking the word "conclusory": they need to explain how the factual recitals do not and cannot give rise to civil conspiracy, which task they decline to undertake.

Wherein the "triumvirate" has openly and brazenly engaged in directing bribes to be paid and obstruction of justice – both serious felonies – they do not escape liability under the Tort Immunity Act, because of the carve-out for willful and wanton behavior. Indeed, the very nature of the overt acts – to save a child sex offender from criminal charges so that she can be reunited with her minor children to re-offend – is prurient and meets the carve-out threshold.

## XIV.    Plaintiff has not failed to state a cognizable claim against Jane F. Girard.

Defendant Jane F. Girard suggests that the FAC is "unintelligible" because it contains

"inappropriate" and "untrue" details. Dkt[54] at p. 7. They point to the labeling of Jane F. Girard as an admitted sex abuser in support, claiming that such labeling is somehow undeserved. They are missing the point: the Plaintiffs have every right to label her as a sex abuser based on supporting evidence, police reports and other records and testimonial evidence. One does not defeat a motion to dismiss by asserting that the pleadings are "untrue".

Notably, Jane F. Girard's attorneys do not make any effort whatsoever to rebut the basis for her characterization as a child sex abuser: Jane F. Girard asserted her Fifth Amendment right against self-incrimination during an interview by Prosecutor Mary Stein pursuant to a criminal investigation for her long history of sexually abusing her minor children Gw and Gr on September 7 2023. FAC at ¶¶5-7. She was twice – or thrice – investigated by the Glencoe Police Department for crimes against the person, including the sex abuse of the minor children.

## XV.     Litigation privilege is not an infinite shield for the Defendants.

As a threshold matter, Jane F. Girard comically attempts to excuse the grotesque abuse of process in the custody case as not actionable based on litigation privilege. Indeed, the custody case was initiated at her direction and sustained in a seemingly never-ending manner at her initiative and in the process (and with her unambiguous knowledge) has wildly blown jurisdictional limits and has proceeded despite her guilt from a civil standard as a sex abuser of the minor children. It would be one thing to engage in legitimate pretrial procedure, motion practice, etc without violating rules or laws or committing intentional torts. The Frankenstein proceedings which the custody case has devolved results directly from myriad breaches of rules, norms, laws and statutes and consummate disregard of constitutional rights. Litigation privilege does not protect Jane from accountability for her monstrous corruption of the custody case.

The litigation privilege does not apply to all misconduct that occurs during judicial

proceedings. To be protected, a statement or conduct must be related to the judicial proceedings in which it is made or occurs. According to the Restatement (Second) of Torts, it must have "some" relation to the proceeding (RESTATEMENT (SECOND) OF TORTS § 587).

In determining if statements or conduct are entitled to protection under the litigation privilege, courts examine their purpose along with the method used to achieve that goal (T. Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 PEPP. L. REV. (2004) at 935). There is no protection for "use of legal process in an improper manner or primarily to accomplish a purpose for which it was not designed" (Oran F. Whiting, Litigation Privilege Immunizes Lawyers from Fraud Actions, ABA (Aug. 8, 2013).

Absolute immunity does not protect lawyers "against claims alleging the pursuit of litigation for the unlawful, ulterior purpose of inflicting injury on the plaintiff and enriching themselves and their client, despite knowledge that their client's claim lacked merit" (Whiting, *supra*.)

Plaintiffs have precisely alleged that the Beermann LLP Defendants assaulted them with their offensive litigation tactics in the underlying family court matter for the past forty-four months in flagrant and wanton violation of statutory time limit under Illinois Supreme Court Rule 922 and post termination which was effected on December 20 2024. The sole purpose has been to intimidate Plaintiffs, to bill excessively and to pressure Kenton Girard to settle the family court proceedings for an extortionate payment of "legal fees".

The Beermann Defendants' attempt to hide behind the "protective veil" of the state court proceedings is misplaced. As we have already established with respect to the inapplicability of the Domestic Relations Exception, large swaths of the state court proceedings were conducted without jurisdiction.

## XVI.   The Beermann LLP Defendants are liable under Section 1983.

The Beermann LLP Defendants rely on five decades old guidance under *Polk County v. Dodson*, 454 U.S. 312, 318–19, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) for the false proposition that attorneys cannot be held liable under Section 1983. In reality, the analysis under *Polk County* concerns a public defender's liability under Section 1983 for assuming the role of a private attorney on behalf of a criminal defendant charged by the state.

Similarly, Wilson Elser relies on the proposition that Section 1983 liability of a private attorney turns on the articulation of **an actual conspiracy** with state officials. Again, Wilson Elser has twisted the requirements, which were well established under *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) wherein a private party may be held liable under Section 1983 if "he is a willful participant in joint action with the State or its agents."

Moreover, proving out the willful participation is not a threshold matter at the motion to dismiss stage, but rather ripens for evaluation at the summary judgment stage. *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 435 (7th Cir. 1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Notwithstanding such fact, Plaintiffs have already sufficiently substantiated the circumstances of willful participation between Beermann LLP and the Judicial Defendants. The extra-jurisdictional orders[10] signed by Defendant Yu on February 7 2025 and February 14 2025 were prepared by Beermann LLP. The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that he is taking orders from Beermann LLP. Finally, the improprieties add up wherein Judge Yu convened a court date on February 25 2025 – at which point he had been sidelined per operation of 735

---

[10] We note these were extra-jurisdictional because of the termination under DWP which was noticed in December 2024, and the missing judicial transfer orders from January 14 2025 and January 23 2025 between Calendars 1 and 51, under which any subsequent calendar's presiding over the state court action raises questions about its subject matter jurisdiction.

ILCS 5/2-1001(a)(3) and later Hon. Johnson signed orders on April 29 2025 and May 1 2025 prepared by Beermann LLP pursuant to court dates held while federal jurisdiction by District Judge Jeremy Daniel was exclusive.

## XVII.  Constitutionally required fair notice of claims is at issue here.

Fair notice is a fundamental aspect of due process, rooted in the Fifth and Fourteenth Amendments of the U.S. Constitution, which ensure that no person shall be deprived of life, liberty, or property without due process of law. It ensures individuals are informed of legal actions against them, allowing them to prepare a defense. This principle safeguards against arbitrary government actions.

In legal proceedings, fair notice requires information provided to parties to be clear, specific, and timely. This includes sufficient detail about the nature and basis of the claim or charge. For instance, in civil litigation, the complaint must outline the factual allegations and legal grounds for relief. In criminal cases, indictments or bills of charges must specify the alleged conduct and statutory provisions violated. This prevents surprise and allows for a meaningful defense to be conducted.

The courts have emphasized the importance of fair notice in cases like *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) wherein notice must be "reasonably calculated" to inform parties of an action and allow them to present objections. In civil proceedings, fair notice ensures all parties are aware of the claims, enabling them to prepare a defense or response. Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim" showing entitlement to relief. This rule underscores the necessity for clarity and specificity, mandating sufficient factual allegations to inform the defendant of the dispute. The adequacy of notice often hinges on the precision of pleadings. The landmark

*Plaintiffs' Combined Opposition to Motions to Dismiss*

decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) established the "plausibility standard," requiring claims to include enough detail to make them plausible. This ensures defendants are not left to speculate about the specifics, allowing for an informed response.

It is axiomatic that Jane F. Girard and the Beermann Defendants' failure to provide a pleading to Plaintiff constitutes a prima facie violation of Plaintiff's constitutional right to fair notice of claims. In reflection of such an unacceptable state of affairs, failure to tender a pleading similarly violates both the Federal Rules and the Illinois Rules of Civil Procedure.

WHEREFORE, Plaintiffs hereby respectfully request that this Court deny the Motions to Dismiss brought by the Defendants hereunder.

Dated: October 14 2025        Respectfully Submitted,

for Kenton Girard:        for Minor Child Gw and Minor Child Gr:

/s/ Kenton Girard        /s/ Toma Makedonski, Esq.
965 Forestway Drive        1271 Old Mill Ct
Glencoe, IL 60022        Naperville, IL 60564
Email: kg5252@yahoo.com        Email: legaltma@gmail.com
Tel: 773-575-7035        Tel: 773-727-5491
       Attorney No. 37672

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this paper was electronically filed with the clerk of this Court on October 14 2025 and was provided via email to the attorneys who have filed appearances in this matter.


<u>/s/ Kenton Girard</u>

*Plaintiffs' Combined Opposition to Motions to Dismiss*

## EXHIBIT 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENTON GIRARD, Minor Child GW., and Minor Child GR., )<br><br>Plaintiffs, )<br><br>v. )<br><br>VILLAGE OF GLENCOE, ILLINOIS, Detective RYAN MCENERNEY, MARIA PAREDES, GWENN WALDMAN, BREANNA TRAUB, BEERMANN LLP, JOHN M. D'ARCO, JAMES M. QUIGLEY, ENRICO J. MIRABELLI, Judge WILLIAM S. BOYD, and Judge RENEE G. GOLDFARB, )<br><br>Defendants. ) | No. 24 C 6882<br><br>Judge Rebecca R. Pallmeyer |

**ORDER**

The motions to dismiss Plaintiffs' amended complaint filed by Defendants John M. D'Arco, James M. Quigley, Enrico J. Mirabelli, and Beermann LLP (collectively, the "Beermann Defendants") [34]; Judges William S. Boyd and Renee G. Goldfarb [81]; Gwenn Waldman [70]; Breanna Traub [66]; Maria Paredes [104]; and Detective Ryan McEnerney and the Village of Glencoe, Illinois [56] are granted. Defendants Boyd and Goldfarb's previously-filed motion to dismiss [30] addressing Plaintiffs' initial complaint is stricken as moot. All claims brought by Plaintiffs Gw. and Gr. are dismissed without prejudice. Plaintiff Kenton Girard's claims against Defendants Boyd and Goldfarb are dismissed with prejudice to the extent that they arise from orders entered by those Defendants in their capacity as judges of the Circuit Court of Cook County. Kenton Girard's remaining claims are dismissed without prejudice to proceedings in state court or to refiling at the conclusion of state court custody proceedings. The Clerk is directed to enter judgment in favor of Defendants Boyd and Goldfarb and dismiss all other Defendants without prejudice. Civil case terminated.

**STATEMENT**

### I. Background

Kenton Girard ("Kenton") and his ex-wife, Jane Girard ("Jane"), are embroiled in a custody dispute concerning their minor daughters, Gw. and Gr.; that case remains pending in the Domestic Relations Division of the Circuit Court of Cook County. In this federal action, Kenton, Gw., and Gr. have made a sprawling set of explosive allegations about various individuals who have some connection to the state court custody dispute. Plaintiffs' operative pleading is their amended complaint filed on December 9, 2024. (*See generally* Amended Compl. [73].)

The central premise of Plaintiffs' lawsuit is that their custody case is one of many Cook County domestic relations disputes corrupted over the past decade by a scheme of bribery and favor-trading orchestrated by lawyers at Beermann LLP, the law firm representing Jane in the Girard custody battle. (*See, e.g., id.* ¶¶ 9–12, 35–40.) With respect to their case in particular, Plaintiffs allege that the Beermann Defendants bribed or otherwise improperly influenced (either directly or via intermediaries) three sets of Defendants: (1) William S. Boyd and Renee G. Goldfarb, judges of the Circuit Court of Cook County's Domestic Relations Division who were previously assigned to the Girard dispute[1]; (2) Breanna Traub, a court-appointed therapist assigned to provide counseling to Gw.; and (3) Ryan McEnerney, a detective with the Glencoe Police Department. Plaintiffs allege that the Beermann Defendants bribed Boyd and Goldfarb to secure favorable rulings for Jane in the custody dispute; induced Traub to improperly disclose confidential information learned in sessions with Gw. to Jane; and bribed McEnerney (via an intermediary), who had investigated Plaintiffs' allegations that Jane sexually assaulted Gw. and Gr., dissuading McEnerny from filing criminal charges against Jane. (*See id.* ¶¶ 40–44, 121, 138, 144.) Plaintiffs appear to suggest that the payment of the bribe to McEnerney came about when McEnerney, at some point, reached out to Jane "in hopes of receiving an illicit payment in exchange for" his declining to seek charges against her. (*See id.* ¶ 181.)

Plaintiffs further allege that another therapist appointed by the state court, Defendant Gwenn Waldman, improperly disclosed confidential information learned in sessions with Gr. both to other court-appointed personnel and to Jane, and that an employee of the Illinois Department of Children and Family Services (DCFS), Defendant Maria Paredes, committed an impropriety by changing her mind about whether criminal charges of sexual assault against Jane were warranted. (*See id.* ¶¶ 141–42, 182–83, 188.) It is unclear whether Plaintiffs believe Waldman and Paredes undertook these acts because they were bribed or otherwise improperly influenced by the Beermann Defendants, or for other reasons. Finally, Plaintiffs allege, independently of the Beermann conspiracy, that Detective McEnerney's failure to properly investigate the sexual assault allegations made by Plaintiffs against Jane was consistent with an unofficial policy of the Village of Glencoe, established and implemented in part by McEnerney himself, "of responding differently and affording less protection to victims of rape and sexual assault, who were exclusively female in [the] Village of Glencoe, than to victims of other crimes." (*See id.* ¶ 257.) Because the impact of the alleged "systematic disregard" for investigations of reported rape and sexual assault exclusively harmed women and girls, Plaintiffs conclude that the conduct "cannot plausibly be explained" by the uneven allocation of police resources, or indeed, by any factor "except for an animus towards women and girls." (*Id.* ¶¶ 259–260.)

In Count I, Plaintiffs jointly claim that Judges Boyd and Goldfarb violated Plaintiffs' "constitutionally protected right to an impartial judge" by issuing "numerous adverse decisions which would not have been rendered by a fair, partial judge." (*Id.* ¶ 202–06.) In Count II, Gr. and Gw. claim that Boyd and Goldfarb violated their First Amendment rights by issuing a gag order against the children in the state court custody dispute (though it is not clear which judge allegedly entered the order). (*Id.* ¶¶ 207–10.) In Count III, Gr. and Gw. claim negligence against Traub and Waldman for violating the duty of confidentiality the therapists owed to the children as their patients. Also in Count III, all three Plaintiffs allege that DCFS employee Paredes violated her duty of care by failing to request the filing of charges against Jane. (*Id.* ¶¶ 211–14.) In Counts IV and V, Plaintiffs level civil RICO charges against all of the Beermann Defendants; Count VI is a claim of unjust enrichment against the Beermann law firm, specifically. (*See id.* ¶¶ 215–47.) In Count VII, Plaintiffs bring a state law civil conspiracy claim against the Beermann Defendants,

---

[1]     According to Plaintiffs, Boyd, and then Goldfarb, have both recused themselves from the state court custody proceedings. (*See* Amended Compl. ¶¶ 121, 152.)

McEnerney, Boyd, and Goldfarb. (*Id.* ¶¶ 248–53.) In Count VIII, Gr. and Gw. claim that McEnerney committed a gender-based equal protection violation by failing to properly investigate the children's allegations of sexual assault against Jane; Gr. and Gw. also appear to bring a *Monell* claim against the Village of Glencoe based on its alleged gender-motivated policy of not investigating such reports. (*See id.* ¶¶ 198–201, 254–69.) Finally, in Count XI, Gr. and Gw. seek injunctive relief mandating that the Village of Glencoe "meaningfully investigate rape and sexual assault cases involve female victims." (*Id.* ¶¶ 277–78.)

## II.    Claims by Minor Children Gr. and Gw.

Kenton properly represents only himself in this case. Minors such as Gr. and Gw., however, may not represent themselves in federal court, *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997), and a parent may not represent their children pro se, as Kenton initially sought to do in this case. *See Foster v. Bd. of Educ. of City of Chicago*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting published opinions) (Seventh Circuit has "repeatedly held" that the general rule "prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se"). After various Defendants alerted Plaintiffs to this issue, they sought to remedy the situation by obtaining the services of an attorney, Toma Makedonski, to represent Gr. and Gw. in this litigation. But attorneys may not file an appearance to represent clients in this court unless they are members in good standing of the general bar of the United States District Court for the Northern District of Illinois or admitted to practice *pro hac vice. See* N.D. ILL. R. 83.12, 83.14. Makedonski meets neither requirement and therefore may not represent Gr. and Gw. in this dispute. The minor children's claims are dismissed without prejudice.

Makedonski—who it appears is representing Gr. and Gw. in a lawsuit filed in state court against Jane (*see* [117] at 4)—was recruited to this case at some time prior to Plaintiffs' filing their amended complaint on December 9, 2024, as Makedonski signed that document on behalf of Gw. and Gr. (*See* Amended Compl. at 66.) At that time, Makedonski had yet to enter an appearance in this case. In a December 27, 2024 filing opposing the motions to dismiss filed by Defendants Traub and Waldman, Kenton claimed (incorrectly) that Makedonski had filed an appearance on the children's behalf, and that Makedonski would soon complete the process of seeking admission to the bar of this court or filing an application to appear *pro hac vice.* ([80] at 1.) That briefing was submitted on behalf of both Kenton and his minor children but was signed only by Kenton, and not Makedonski. (*See id.* at 5.)

Makedonski finally entered appearances on Gr. and Gw.'s behalf on February 9, 2025. (*See* [93, 94].) Curiously, the appearance forms were filed on the docket not by Makedonski but via pro se email submission—in other words, by Kenton. Nonetheless, the forms bear what appears to be Makedonski's electronic signature. Critically, however, both forms affirm that as of February 2025, Makedonski had yet to become a member of this court's bar or complete a *pro hac vice* application. In the time since, Makedonski has not completed either process—though this did not stop Makedonski from signing on Gr. and Gw.'s behalf Plaintiffs' April 20, 2025 opposition to Defendant Paredes' motion to dismiss. (*See* [107] at 4.)

Gr. and Gw.'s claims are dismissed without prejudice. Attorney Makedonski, a member of the bar of the State of Illinois, is reminded of his professional responsibilities. *See* ILL. R. PRO. CONDUCT 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so"). The court addresses Kenton's remaining claims against Boyd, Goldfarb, the Beermann Defendants, McEnerney, and Paredes below.

3

## III.   Claims by Kenton Girard

### A.   Boyd and Goldfarb

Kenton alleges that Judges Boyd and Goldfarb violated his constitutional right to an impartial judge and participated in a civil conspiracy with the Beermann Defendants and McEnerney. Boyd and Goldfarb moved to dismiss the initial complaint, arguing that this court must or should abstain from ruling on the claims against Boyd and Goldfarb, and that both judges are entitled to judicial immunity on the claims in any case. Plaintiffs responded on November 26, 2024 [68] but then proceeded to file the operative amended complaint on December 9, 2024. Boyd and Goldfarb again moved to dismiss, and the court entered an agreed briefing schedule that called for Plaintiff's response on January 31, 2025 and a reply on February 14, 2025 [83].

January 31 came and went without Plaintiffs filing a response or seeking additional time to do so. Boyd and Goldfarb filed their reply as directed on February 14 [94], reiterating their prior arguments and arguing that the court would also be justified in granting the motion because Plaintiffs' failure to respond constituted waiver. In the time since, Plaintiffs have failed to acknowledge Boyd and Goldfarb's pending motion and reply in support thereof, even as Plaintiffs have continued to actively participate in the case by filing motions of their own and responding both to a motion to dismiss filed by Defendant Paredes and a motion to intervene by a third party [97, 102, 107, 117].

Failing to respond to arguments in support of a motion to dismiss constitutes waiver, and this court could accept Boyd and Goldfarb's contention, supported by pertinent legal authority, that Plaintiffs' amended complaint does not state a valid claim against them. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010). Plaintiffs' failure to respond aside, it is clear that judicial immunity bars Kenton's claims as against the two judges.[2] Indeed, even if it were true that they accepted bribes from the Beermann Defendants in exchange for entering orders favorable to their clients—which the judges strenuously deny—the judges could not be held liable for Kenton's alleged injuries flowing from those orders. A judge lacks judicial immunity only for "actions not taken in the judge's judicial capacity" or for actions "taken in the complete absence of all jurisdiction." *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F. 4th 818, 824 (7th Cir. 2025) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Even if "done maliciously or corruptly," Boyd and Goldfarb's entering of orders were judicial acts taken pursuant to the jurisdiction of the Circuit Court of Cook County. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citations omitted). Defendants' alleged acceptance of bribes is, of course, a non-judicial act, but the particularized harm to the Plaintiffs is the judges' entry of orders in Plaintiffs' custody dispute, and, as explained above, the judges are immune from liability for those acts.

Kenton's claims against Defendants Boyd and Goldfarb are dismissed. To the extent those claims are based on injuries that flow directly from orders issued by Boyd and Goldfarb as judges of the Circuit Court of Cook County, the claims are dismissed with prejudice, as Kenton has already amended his complaint once and any additional factual allegations made in a further amended pleading would have no bearing on the application of judicial immunity to such claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (courts should give plaintiffs at least one opportunity to amend complaint before dismissing claims with prejudice; a court may decline to grant leave to amend claims where

---

[2]    Though the court has no occasion to rule on Gr. and Gw.'s claims against Boyd and Goldfarb in this order, the same result would very likely hold for the minor children's claims against the judges.

4

it "is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted") (citations omitted).

## B. Civil RICO Claims (Beermann Defendants)

The court next addresses Kenton's civil RICO claims against the Beermann Defendants. The Beermann Defendants argue the court should decline jurisdiction over Kenton's claims against them because entertaining the claims would improperly intrude on the domain of the Circuit Court of Cook County, where the Girard custody dispute remains pending. The court agrees. Kenton's claims against the Beermann Defendants are dismissed without prejudice to refiling after the custody proceedings in state court have concluded.

Plaintiffs argue that traditional abstention doctrines—the *Rooker-Feldman* doctrine, the domestic-relations exception, and the *Younger*, *Burford*, and *Colorado River* abstention doctrines—are not applicable to the claims against these Defendants. (*See, e.g.* Pl. Resp. to Beermann Defs. Mot. to Dismiss [67] at 2–7.) But as the Seventh Circuit held in *J.B. v. Woodard*—a case Plaintiffs themselves rely on (*see* Pl. Resp. to Beermann Defs. Mot to Dismiss at 7)—the fact "that no abstention doctrine is an exact fit does not resolve the jurisdictional inquiry." 997 F.3d 714, 723 (7th Cir. 2021). Abstention may nonetheless be warranted where the adjudication of a plaintiff's claims would "threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government," and more generally, where denying a federal forum would "clearly serve an important countervailing interest, including regard for federal-state relations." *Id.* (citations omitted). The *Woodard* court further suggested that abstention on these grounds may be especially appropriate where the plaintiff's complaint and the relief sought reveal a design of receiving a favorable ruling "that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Id.*

In this case, it is plain that Kenton wishes to affect the state court proceedings in at least one respect: he asks this court to issue an injunction preventing the Beermann Defendants from practicing family law in Cook County at all, which would, of course, require Jane to obtain new representation in the custody dispute underlying this case. (*See* Amended Compl. at 65.) Moreover, even if the court were to consider Kenton's civil RICO claims against the Beermann Defendants while specifically ruling out that particular form of injunctive relief, the court has little doubt that full-blown federal litigation between Kenton and the Beermann Defendants would be disruptive of the state court custody proceedings. At minimum, the parallel litigation is likely to divert both parties' attention and resources from the underlying dispute. More importantly, however, this court's entertaining claims essentially alleging that the ongoing state proceedings are a sham would "reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts." *Woodard*, 997 F. 3d at 724.

Kenton's civil RICO claims against the Beermann Defendants are dismissed without prejudice to refiling after the state court custody dispute has concluded.

## C. Remaining State Law Claims

That leaves Kenton's state law claims of civil conspiracy as against the Beermann Defendants and McEnerney, and negligence as against Paredes. There are no longer any federal claims before this court, and the complaint does not establish that the requirements of diversity jurisdiction under 28 U.SC. § 1332 are met as between Kenton and these Defendants. The court therefore declines to exercise supplemental jurisdiction over Kenton's remaining state law claims,

and those claims are dismissed without prejudice. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits") (citation omitted).

ENTER:

Dated: August 12, 2025

REBECCA R. PALLMEYER
United States District Judge

6

## EXHIBIT 2

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
   to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
9/24/2025 11:03 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01
34591299

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | |
|---|---|
| IN RE THE FORMER MARRIAGE OF | ) |
| KENTON GIRARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) **Calendar 1** |
| vs. | ) |
| | ) |
| JANE F. GIRARD, | ) Case No. 2015-D-009633 |
| | ) |
| Respondent, | ) |

**NOTICE AS TO VOID ORDERS RE PETITIONS SEEKING SOJ FOR CAUSE**

Now comes the Petitioner KENTON GIRARD, in pro se, and in articulation of his aforedescribed notice hereby states as follows:

Notwithstanding Petitioner's recent notice as to void orders filed on September 18 2025, under which the state court has not enjoyed subject matter jurisdiction over these proceedings since at least April 28 2025, recent orders propounded by Hon. Edward A. Arce and Hon. Robert W. Johnson relating to their own petitions for substitution of judge for cause are also void for reasons detailed *infra*.

**I.  All orders downstream from the recent self-adjudications of cause are void.**

Pursuant to 735 ILCS 5/2-1001(a)(3), a separate judicial officer must adjudicate a sufficiently pleaded petition for substitution of judge for cause. "The fact that a second judge will examine the for-cause allegations allows for an independent, neutral assessment of the allegations against the challenged judge ***." *In re Marriage of O'Brien*, 2011 IL 109039 at 46.

Under *In re Marriage of Peradotti*, 2018 IL App (2d) 180247, the Illinois Appellate Court articulates the contours of jurisprudence regarding the removal – whether voluntary or

*Notice as to Void Orders Re Petitions Seeking SOJ for Cause*                    1

FILED DATE: 9/24/2025 11:03 AM  2015D009633

involuntary – as to judicial officers[1]. Reciting at ¶23 from *In re Petition of C.M.A.*, 306 Ill. App. 3d 1067 (1999), the court in *Peradotti* emphasized:

> Illinois law firmly establishes that once a motion for substitution of judge for cause is brought, that judge loses all power and authority over the case and any orders entered after a judge's removal or **after an improper denial of such motion** are of no force or effect... a judge who had been removed from a case for cause has no jurisdiction to enter enforceable orders in that case. Any attempt by the removed judge to rule in such a matter is futile, rendering void all orders entered by that judge after substitution for cause. (emphasis supplied)

Here, at the unethical and illicit urging of Beermann LLP, Hon. Edward A. Arce adjudicated the petition seeking his own removal for cause despite having admitted on the record in open court on August 4 2025 that he has personally been in the eyewear business in Little Village and Pilsen for decades and is therefore a direct competitor of Petitioner who is in the process of opening new eyewear business storefronts *in the very same neighborhoods*. Similarly goaded by Beermann LLP, Hon. Robert W. Johnson also adjudicated the petition seeking his own removal for cause despite glaring evidence – in the form of court dates he convened and court orders he signed wherein these proceedings were strictly under federal jurisdiction pursuant to operation of the federal removal state as codified under 28 U.S.C. § 1443.

Simply put, both applications for cause facially implicate unacceptable bias against Petitioner. In the former instance, Petitioner is the obvious loser when his direct business competitor stands in judgment of him. In the latter scenario, wherein a Cook County judge ostentatiously disregards the force and effect of federal law, he has therefore made an abject mockery of the "rule of law" in the Cook County court system. Per the analysis of the court in *Peradotti*, therefore, both petitions were improperly denied without obtaining proper referees and all subsequent rulings made by Hons. Arce and Johnson are void for lack of authority.

---

[1] Incidentally, Beermann LLP and in specific Respondent's attorney Matthew D. Elster represented the appellee under *Peradotti*. Therefore a whiff of irony is raised wherein Mr. Elster has repeatedly asked judicial officers under these proceedings to specifically undertake extrajudicial, *ultra vires* actions including *inter alia* ruling on their own petitions for cause.

*Notice as to Void Orders Re Petitions Seeking SOJ for Cause*

FILED
9/24/2025 11:03 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633

2

FILED DATE: 9/24/2025 11:03 AM    2015D009633

## II.    The reconsideration rulings by Hons. Arce and Johnson are void per their recusals.

Referencing a dissolution of marriage proceeding namely *Brzowski v. Brzowski*, 2014 IL App (3d) 130404 the Illinois Appellate Court noted "it is a generally accepted rule in both state and federal courts that once a judge recuses, that judge **should have no further involvement in the case** outside of certain ministerial acts." *Brzowski* at   19. (emphasis supplied)

Based on these authorities, the *Brzowski* court concluded that when a judge is disqualified in a case, either by recusal or through a petition for substitution, that judge cannot enter any further orders in the matter. A recused or otherwise disqualified judge has no power to enter further substantive orders in the case, absent—where applicable—a Rule 63(D) remittal. Whether a disqualification is subject to reconsideration depends on the source of the disqualification. A recused judge cannot reconsider his recusal, for that would itself be a substantive decision in excess of the residual powers of a recused judge. *Brzowski* at ¶¶ 19, 29-30.

On August 4 2025, Hon. Edward A. Arce transferred the proceedings back to the Presiding Judge where the form judicial transfer order he signed checks Box 8282 under <u>Section III. Reassignments to or from Presiding Judge</u> which duly memorializes "This Cause coming before the court for reassignment, IT IS HEREBY ORDERED **that this is assigned to the Presiding Judge**." (emphasis supplied) As a result, Hon. Edward A. Arce acted wholly without jurisdiction wherein – again, at the illicit and illegal goading of Beermann LLP – on September 9 2025 he denied the motion to reconsider directed at his clearing of the imperiled judicial officers Abbey Romanek and Robert W. Johnson. The only way he could have legally entered such a ruling would be for the Presiding Judge Regina Scannicchio to have transferred jurisdiction back to him, which did not happen.

FILED
9/24/2025 11:03 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01

*Notice as to Void Orders Re Petitions Seeking SOJ for Cause*                                    3

FILED DATE: 9/24/2025 11:03 AM   2015D009633

Similarly, on September 18 2025 Hon. Robert W. Johnson transferred the proceedings back to the Presiding Judge where the form judicial transfer order he signed checks Box 8282 under <u>Section III. Reassignments to or from Presiding Judge</u> which duly memorializes "This Cause coming before the court for reassignment, IT IS HEREBY ORDERED **that this is assigned to the Presiding Judge**." (emphasis supplied) As a result, Hon. Robert W. Johnson acted wholly without jurisdiction wherein – again, at the illicit and illegal goading of Beermann LLP – on September 22 2025 he denied the motion to reconsider directed at his clearing of the imperiled judicial officers William Yu. The only way he could have legally entered such a ruling would be for the Presiding Judge Regina Scannicchio to have transferred jurisdiction back to him, which did not happen.

### CONCLUSION

Per the foregoing, the petitions for substitution of judge for cause directed at Hon. Edward Arce and Hon. Robert W. Johnson remain unresolved. Until those matters are adjudicated – which resolution would require appropriate direction by Domestic Relations Presiding Judge Regina Scannicchio – the instant proceedings cannot move forward.

DATED: September 24, 2025                Respectfully submitted,

KENTON GIRARD

By:    /s/ Kenton Girard
           965 Forestway Drive
           Glencoe, IL 60022
           kg5252@yahoo.com
           Tel: 773-575-7035

FILED
9/24/2025 11:03 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01

*Notice as to Void Orders Re Petitions Seeking SOJ for Cause*        4

## EXHIBIT 3

**Supreme Court of the United States**
**Office of the Clerk**
**Washington, DC  20543-0001**

August 28, 2025

Scott S. Harris
Clerk of the Court
(202) 479-3011

Ms. Marissa Girard
965 Forestway Drive
Glencoe, IL  60022

Re:  Marissa Girard
v. Kenton Girard, et al.
Application No. 25A237

Dear Ms. Girard:

The application for an extension of time within which to file a petition for a writ of certiorari in the above-entitled case has been presented to Justice Barrett, who on August 28, 2025, extended the time to and including December 5, 2025.

This letter has been sent to those designated on the attached notification list.

Sincerely,

Scott S. Harris, Clerk

by

Angela Jimenez
Case Analyst

*Plaintiffs' Combined Opposition to Motions to Dismiss*

## Supreme Court of the United States
## Office of the Clerk
## Washington, DC 20543-0001

NOTIFICATION LIST

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

Ms. Marissa Girard
965 Forestway Drive
Glencoe, IL 60022

Clerk
United States Court of Appeals for the Seventh Circuit
219 S. Dearborn Street, Room 2722
Chicago, IL 60604

FILED DATE: 9/24/2025 11:03 AM   2015D009633

## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 24th day of September 2025 by email to all counsel of record. A copy of the foregoing was also transmitted to the office of the Presiding Judge of the Domestic Relations Division of Cook County and Hon. William Yu.

/s/ Kenton Girard
Kenton Girard

FILED
9/24/2025 11:03 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01

*Notice as to Void Orders Re Petitions Seeking SOJ for Cause*                    5