**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MINOR CHILD GW, MINOR CHILD GR, and KENTON GIRARD, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 25 C 4551 |
| v. | ) ) | Judge Sara L. Ellis |
| JUDGE REGINA A. SCANNICCHIO, JUDGE ROSSANA P. FERNANDEZ, JUDGE WILLIAM YU, JUDGE ROBERT W. JOHNSON, JUDGE EILEEN M. O'CONNOR, PHILIP A. KIRALY, BRADLEY S. LEVISON, JANE F. GIRARD, MATTHEW D. ELSTER, ENRICO J. MIRABELLI, and BEERMANN LLP, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>OPINION AND ORDER</u>**

In the latest in a line of litigation in both state and federal court arising from contentious divorce and child custody proceedings, Plaintiffs Kenton Girard ("Kenton") and his twin daughters, GW and GR, filed this lawsuit against several judges involved in the state court proceedings, GW and GR's mother, attorneys representing the mother in the custody proceedings, and Village of Glencoe representatives. In their first amended complaint, Plaintiffs bring the following claims: (1) violation of the First Amendment against Judges Regina A. Scannicchio, Rossana P. Fernandez, Robert W. Johnson, and Eileen M. O'Connor (Count I); (2) violation of a right to a remedy against Judges Scannichio, Fernandez, Johnson, O'Connor, and William Yu (collectively, the "Defendant Judges") (Count II); (3) civil conspiracy against Matthew Elster, one of the mother's attorneys in the custody proceedings, Glencoe Village Commissioner Bradley Levison, and Glencoe Village Manager Phillip Kiraly (with Levison, the

"Village Defendants") (Count III); (4) violation of the right to fair notice of claims against Judges Scannicchio, Fernandez, Johnson, and Yu, Elster, and his law partner, Enrico J. Mirabelli (Count IV); (5) negligence against Judges Schannicchio, Fernandez, Johnson, and Yu, Elster, and Mirabelli (Count V); (6) abuse of process against the mother, Jane Girard ("Jane"), Elster, Mirabelli, and their law firm, Beermann LLP (with Elster and Mirabelli, the "Beermann Defendants") (Count VI); and (7) intentional infliction of emotional distress ("IIED") against Jane and the Beermann Defendants (Count VII). The Defendant Judges, the Beermann Defendants, the Village Defendants, and Jane have all filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Because the Court must abstain from resolving many of Plaintiffs' claims, judicial immunity bars the claims against the Defendant Judges, and the Court declines to exercise supplemental jurisdiction over those claims not barred by abstention doctrines, the Court dismisses Plaintiffs' first amended complaint without prejudice.

## BACKGROUND[1]

Kenton and Jane had fraternal twins, GW and GR. Kenton and Jane divorced, with contentious custody proceedings following in the Circuit Court of Cook County, No. 2015-D-009633 (the "Custody Lawsuit"). GW and GR presently live in Glencoe with Kenton. Eleven different judges have overseen the Custody Lawsuit. Judge Scannicchio serves as the presiding judge in the Cook County Domestic Relations Division. Judge Fernandez is a circuit judge in

---

[1] The Court takes the facts in the background section from Plaintiffs' first amended complaint and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

the Domestic Relations Division who presided over the Custody Lawsuit until she recused herself in January 2025. Judge Yu is an associate judge in the Domestic Relations Division who became the presiding judge of the Custody Lawsuit after Judge Fernandez recused herself. Judge Johnson is also an associate judge in the Domestic Relations Division.

Mirabelli, a senior partner at Beermann, oversees Jane's representation in the Custody Lawsuit, with assistance from Elster, another Beermann attorney. In July 2023, Cook County State's Attorney Mary Stein identified GW and GR as victims of sexual abuse and rape by their mother, Jane. Jane obtained criminal defense counsel, who informed Stein that Jane asserted her Fifth Amendment right against self-incrimination. On January 16, 2023, Jane illegally recorded a conversation inside a private doctor's office in violation of Illinois' eavesdropping law, 720 Ill. Comp. Stat. 5/14-2 *et seq.* Around March 27, 2024, Jane placed an Apple air tag on the vehicle that GW, GR, and Kenton's current wife, Marissa, use in violation of the Illinois electronic tracking law, 720 Ill. Comp. Stat. 5/21-2.5. Glencoe Detective Ryan McEnerney questioned Jane about these activities on May 7, 2024, and Jane again asserted her Fifth Amendment right. No criminal charges resulted because Jane and her counsel at Beermann arranged to pay a bribe to McEnerney. Specifically, Elster worked with Levison, a fellow University of Illinois alumnus and a Glencoe Village Commissioner, to leverage influence over Kiraly, the Glencoe Village Manager, for the Glencoe Department of Public Safety to back off its investigations into Jane. Levison connected Elster with Kathryn Ciesla, a "fixer" on the North Shore, who arranged the bribe to the Glencoe Department of Public Safety. Doc. 38 ¶ 32. After an internal investigation, McEnerney was demoted to a facility maintenance role, which removed him from any role in criminal investigations.

In the Custody Lawsuit, Beermann has filed at least twenty motions seeking sanctions against or the jailing of Kenton and Marissa. On July 14, 2023, Judge William S. Boyd appointed Joel L. Levin as GW and GR's child representative, after guardian ad litem Vanessa Hammer resigned. Levin favored Beermann and Jane, only communicating several times with GW and GR. Levin did not inform the court about correspondence he received about Jane's history of sexually abusing GW and GR from their therapists. GW and GR expressed dissatisfaction with Levin's representation, prompting Levin to move to withdraw as GW and GR's child representative in August 2024. GW and GR then filed a pro se motion to intervene in the Custody Lawsuit, but Judge Fernandez struck the motion without providing them with an opportunity to resubmit it through counsel. GW and GR did not have another child representative appointed in the Custody Lawsuit.

Judge Renee Goldfarb presided over the Custody Lawsuit for some time until she recused herself in the face of allegations that she took bribes from Beermann to provide favorable decisions to Jane. Judge Fernandez took over the Custody Lawsuit in September 2024. Marissa filed a motion for substitution of judge directed at Judge Fernandez on October 16, 2024. At an October 18, 2024 hearing, Judge Fernandez orally granted Marissa's motion but later changed her ruling after further argument by Mirabelli. Judge Fernandez then produced a trial order with deadlines for written and oral discovery and subsequently ceded her jurisdiction back to Calendar 1 while Judge Scannicchio addressed the question of Judge Fernandez's removal. GW and GR subsequently made many requests to Judge Scannicchio and the Office of the Presiding Judge to allow them to file on their own behalf or through a child representative in the Custody Lawsuit, but their requests were disregarded.

4

On January 14, 2025, Judge Scannicchio transferred the Custody Lawsuit to Judge Flannigan, Calendar 51. On January 23, 2025, Judge Scannicchio transferred jurisdiction back to Judge Fernandez, Calendar 99. But Plaintiffs never received the January 14 and January 23 transfer orders, nor do they appear on the docket. Judge Fernandez recused herself, and Judge Yu, Calendar 89, took over the Custody Lawsuit.

Judge Yu set the Custody Lawsuit for a trial on May 1 and 2, 2025. Mirabelli characterized the trial as one for criminal contempt with Dr. Phyllis Amabile, the court-appointed custody evaluator, as the only witness. But on April 17, 2025, Beermann disclosed eight additional witnesses for the trial.

Intervening events delayed the trial, however. In February 2025, Marissa and Kenton filed petitions to remove Judge Yu from the Custody Lawsuit for cause. Third-party claims were filed in the Custody Lawsuit on March 5, 2025, after which Elster filed a motion to disqualify Marissa's attorney, Robert Holstein, for not having legal malpractice insurance. In light of the petition to disqualify Judge Yu, Judge Scannicchio appointed Judge Johnson to oversee the hearing on the motion to disqualify Marissa's attorney on April 24, 2025. GW and GR's attorney also noticed a motion to intervene for presentment at that hearing, and Kenton filed a motion to disqualify Judge Scannicchio. Judge Johnson muted Kenton, Marissa, and GW and GR's attorney during this hearing. Later that day, GW and GR sent an email to Judge Scannicchio and the Office of the Presiding Judge, with a copy to Judge Johnson, asking that (1) the court recognize their status as crime victims, (2) the court stay the proceedings to allow them to designate a support person to attend all future court hearings, (3) the court enter a protective order against Jane, (4) their legal representative present their motion to intervene, (5) criminal investigations into Jane be reinitiated, and (6) their right to live with Kenton be

respected. Judge Johnson then held two court hearings on April 29 and May 1, 2025, despite the fact that Marissa had removed the Custody Lawsuit to federal court by that time.[2] Judge Johnson held another hearing on June 24, 2025, but Beermann did not give notice of this hearing to Kenton or others. And on July 10, 2025, Mirabelli filed a motion for criminal contempt proceedings against Kenton and Marissa.

Separately, GW and GR had filed a motion seeking limited emancipation under Cook County Case No. 2024-COMS-0016 to allow them to sign their own business contracts. Beermann sought to consolidate this case into the Custody Lawsuit and otherwise delay the case. On April 23, 2025, Judge Kathy Flanagan of the Law Division reprimanded Beermann for its tactics and denied the motion to consolidate. Judge Flanagan ordered depositions, including Jane's, to proceed.

In 2024, Kenton, GW, and GR also filed a civil lawsuit against Jane and others, including Beermann lawyers, in the Circuit Court of Cook County Law Division, over which Judge O'Connor presided.[3] *G.W. v. Girard*, No. 2024-L-012053 (the "Rape Lawsuit"). On June 18, 2025, in the Rape Lawsuit, Beermann presented a motion seeking Rule 137 sanctions based on the naming of certain Beermann attorneys as defendants. Judge O'Connor entered sanctions against Kenton in light of her finding that various immunities protected the named judges and attorneys from suit. She had cautioned Kenton against suing attorneys for their actions in the Custody Lawsuit and imposed sanctions soon after Kenton filed the present lawsuit. Kenton understands Judge O'Connor to have imposed the sanctions for filing suit in federal court against

---

[2] The federal court remanded the case to district court on May 6, 2025, finding no basis for subject matter jurisdiction. *See Girard v. Girard*, No. 25 C 4586, Doc. 16 (N.D. Ill. May 6, 2025). Marissa appealed the remand, with the Seventh Circuit dismissing the appeal for lack of jurisdiction. *Girard v. Girard*, No. 25-1854, Doc. 10 (7th Cir. July 21, 2025).

[3] The case remains pending, but Judge O'Connor no longer is the assigned judge.

Beermann attorneys and Cook County judges in violation of Judge O'Connor's order not to sue attorneys or judges. After the imposition of sanctions, Kenton filed an emergency motion for injunctive relief in another federal case he had filed against the Village of Glencoe and others, *Girard v. Village of Glencoe*, No. 24 C 6882. The court denied Kenton's emergency petition, finding that it had no jurisdiction to interfere with state court proceedings. *Id.*, Doc. 120 (N.D. Ill. July 21, 2025).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. If, however, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

7

1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants raise a host of arguments as to why the Court should dismiss Plaintiffs' claims against them. The Court finds it necessary to only address arguments related to abstention and judicial immunity at this time.[4]

### I.      Abstention Doctrines

First, the Court considers Defendants' arguments that Plaintiffs' claims improperly seek review of state court rulings, which either *Rooker-Feldman* or *Younger* abstention prohibits, or otherwise improperly seek to interfere with state court proceedings.

#### A.      *Rooker-Feldman*

The *Rooker-Feldman* abstention doctrine says that federal courts other than the Supreme Court lack authority to hear challenges to state court decisions. It derives from two Supreme Court cases that held that inferior federal courts have "no authority to review final judgments of

---

[4] The Court notes that Defendants' arguments about GW and GR's capacity to sue on their own behalf as minors appear to be moot given Plaintiffs' representation that GW and GR have attained majority age in the time that this motion has been pending. Because the Court finds dismissal appropriate on other grounds, the Court does not make a definitive ruling on this issue but reminds Plaintiffs to be cognizant of all procedural requirements in the case of future litigation.

a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."). The doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Seventh Circuit recently described the four necessary criteria for *Rooker-Feldman* to apply: "*First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024). "[T]he crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (quoting *Feldman*, 460 U.S. at 483–84 n.16).

*Rooker-Feldman* does not prevent plaintiffs from proceeding in federal court if the plaintiffs filed the federal suit before their state court proceeding had concluded. *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014) ("*Rooker-Feldman* does not bar the claims of federal-court plaintiffs who . . . file a federal suit when a state-court appeal is pending."), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023); *see also Pangman v. Sellen*, 839 F. App'x 1, 5 (7th Cir. 2020) ("[T]he Supreme Court has made clear that the entry of a state-court judgment after a federal lawsuit has commenced . . . does not trigger a jurisdictional bar."). But the Seventh Circuit has acknowledged that *Rooker-Feldman* can apply "in certain circumstances when the state court still can modify the judgment in an ongoing child-

custody case." *Taylor v. Cir. Ct. of Cook Cnty.*, No. 24-2132, 2025 WL 601213, at *2 (7th Cir. Feb. 25, 2025); *Hadzi-Tanovic*, 62 F.4th at 400.

To the extent that Kenton challenges any final custody orders in the Custody Lawsuit, *Rooker-Feldman* bars him from doing so. *See Obi v. Cook Cnty.*, No. 25 C 3096, 2025 WL 3215780, at *3 (N.D. Ill. Nov. 18, 2025) (*Rooker-Feldman* barred review of final custody order, noting that "[t]he state court's continued management of custody and child support-related issues under the same caption does not alter the [final] character of the underlying custody order"). Plaintiffs' allegations concerning the invalidity of the proceedings or alleged fraud that occurred in the proceedings do not change this conclusion. *See Gilbank*, 111 F.4th at 781 ("*Rooker-Feldman* applies even where the federal plaintiff alleges that the state courts that injured her were corrupt."); *id.* at 785 ("The Supreme Court has never suggested that *Rooker-Feldman* does not apply to claims that sound in fraud. If a state-court loser can challenge a state-court judgment in federal court merely by alleging fraud, that exception could too easily swallow the rule."). But to the extent that Plaintiffs seek damages for the violation of their rights that have generally occurred during the ongoing proceedings in the Custody Lawsuit and the Rape Lawsuit instead of attacking a specific final order in these cases, *Rooker-Feldman* does not bar the Court from considering Plaintiffs' claims. *See Huiras v. Cafferty*, No. 22-3081, 2023 WL 4842323, at *2 (7th Cir. July 28, 2023) ("Because Huiras tells us that the litigation in state court continues and Huiras attacks conduct independent of any state-court judgment, the parties appropriately do not consider the *Rooker-Feldman* doctrine.").

## B. *Younger*

Alternatively, "*Younger* [abstention] generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing

state proceedings." *FreeEats.com v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007); *see also Younger v. Harris*, 401 U.S. 37, 45 (1971) ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). *Younger* "require[s] federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998). *Younger* applies only to "three limited categories of cases . . . : where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings implicating a state's interest in enforcing orders and judgments of its courts." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). The Court cannot find that the Custody Lawsuit or the Rape Lawsuit fall within these categories. *See Lopez v. Kubalanza*, No. 24 C 13340, 2025 WL 2306815, at *11 (N.D. Ill. Aug. 11, 2025) ("To the Court's knowledge, the Seventh Circuit has extended *Younger* abstention to custody proceedings only when the *state* has initiated them. . . . The Seventh Circuit, in fact, has expressly recognized that 'none' of the limited categories where *Younger* applies 'fits exactly' when a child custody proceeding is initiated by a private party." (citing *Woodard*, 997 F.3d at 722)). Although an ongoing state court contempt proceeding would warrant *Younger* abstention, *see Juidice v. Vail*, 430 U.S. 327, 335–36 & n.12 (1977), Defendants do not raise any contempt proceedings in either state lawsuit as a basis for *Younger* abstention. Therefore, the Court does not find that *Younger* abstention applies in this case.

11

### C.      Other Abstention Doctrines

Although *Rooker-Feldman* and *Younger* abstention do not neatly apply to this case, the Court must consider whether other reasons exist to abstain from exercising jurisdiction over Plaintiffs' claims.[5]  The domestic relations exception to federal subject matter jurisdiction precludes federal courts from exercising jurisdiction over claims that implicate "the issuance of a divorce, alimony, or child custody decree."  *Budorick v. Maneri*, 697 F. App'x 876, 878 (7th Cir. 2017).  Some cases have read the domestic relations exception extremely narrowly, applying it only where a plaintiff seeks direct interference with a domestic relations order.  *See, e.g.*, *Woodard*, 997 F.3d at 723 ("Edwin's procedural and substantive due process claims do not fit the narrow and precise parameters of the exception, however, because his complaint does not, at least on its face, request the direct entry of a child custody order.  Edwin instead seeks a judgment against defendants whose actions allegedly paved the way for the state court's orders."); *Lopez*, 2025 WL 2306815, at *12 ("Her requests for damages based on the defendants' allegedly fraudulent conduct are not barred by [the domestic relations] exception, as they would not require this Court to issue any family-law rulings.  The Court's analysis of these claims may call into question the state court's child custody proceedings, but they would not directly affect any state-court, family-law order.").  But other cases suggest a broader reading, with the exception applying where claims involve some application or interpretation of family law concepts.  *See, e.g.*, *Taylor*, 2025 WL 601213, at *2 ("[T]he domestic-relations exception to federal jurisdiction blocks the adjudication of claims that turn on the application of family law. . . . Resolving most of Taylor's claims against [the father of her child], the judges, and the child representative would encroach on the state court's application of family law, and we

---

[5] The Beermann Defendants also cite to *Colorado River* and *Burford* abstention, but the Court does not find it necessary to discuss these abstention doctrines.

therefore lack jurisdiction."); *Jones v. Brennan*, 465 F.3d 304, 307–08 (7th Cir. 2006) (probate exception would bar federal court from addressing claims arising from the administration of an estate); *cf. Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018) ("In contrast to the situation in *Jones*, Kowalski does not challenge any action taken by the court and its officers in the course of adjudicating his marriage or custody action. He complains only about outside actors who allegedly interfered in his case. We need not pass on the state court's application of family law in order to adjudicate Kowalski's case."). The Court need not make a conclusive determination as to the applicability of the domestic relations exception here, however.

Instead, the Court finds that general "principles of equity, comity, and federalism [that are] foundational to our federal constitutional structure" require the Court to abstain from exercising jurisdiction over Plaintiffs' claims concerning the violations of the First Amendment, their right to a remedy, and their right to fair notice of claims, as well as for negligence and abuse of process (Counts I, II, IV, V, and VI). *Woodard*, 997 F.3d at 722. These claims all essentially ask the Court to second-guess the state court's determinations in the Custody Lawsuit and review the merits of the state court's rulings. Although Plaintiffs only seek damages, and not injunctive relief, they essentially seek a ruling from the federal court to then use affirmatively in the state court proceedings to challenge the underlying state court orders. *See Lopez*, 2025 WL 2306815, at *13 ("Although a declaration that the state court is violating her constitutional and ADA rights and a damages reward to compensate those violations would not necessarily require the state court to alter their proceedings, it would put pressure on it to do so."). And, as several other courts have noted, the fact that Plaintiffs have named several judges as Defendants "indicates an intent to disrupt the state-court proceedings." *See id.* at *14 (collecting cases); *Wereko v. Rosen*, No. 22 C 02177, 2023 WL 2241989, at *9 (N.D. Ill. Feb. 27, 2023). In such

13

circumstances, the Seventh Circuit has expressly indicated that "federal courts need to stay on the sidelines." *Woodard*, 997 F.3d at 723 (abstaining in a case where "the entire design of his federal action [was] to receive a favorable federal constitutional ruling that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings"). Therefore, the Court dismisses Counts I, II, IV, V, and VI without prejudice. Plaintiffs should raise their concerns with the proceedings in the Custody Lawsuit and Rape Lawsuit in state court, including on appeal of any judgments entered in those cases.

## II. Judicial Immunity

Additionally, even if the Court did not find abstention appropriate, the Court would find that Plaintiffs cannot proceed against the Defendant Judges based on judicial immunity. "The doctrine of judicial immunity has been embraced 'for centuries,'" and "confers complete immunity from suit, not just a mere defense to liability." *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005) (citation omitted). Judicial immunity applies to acts performed by judges in their judicial capacity. *Id.* at 661. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (citation omitted) (internal quotation marks omitted).

Plaintiffs argue that the Defendant Judges cannot hide behind judicial immunity because they lacked jurisdiction to take the actions of which Plaintiffs complain, including because Kenton filed a notice of termination in the Custody Lawsuit and Marissa removed the Custody Lawsuit to federal court. Plaintiffs also contend that Judge O'Connor acted without jurisdiction because she imposed sanctions on Kenton for filing this case in federal court. Finally, Plaintiffs argue that Judge Scannicchio's actions as presiding judge do not qualify as judicial acts because

14

she merely allocates other judges to pending cases and does not make rulings on the merits of any cases. None of these arguments have merit, however.

Initially, although Plaintiffs maintain that the Defendant Judges acted without jurisdiction, their arguments do not go to whether the Defendant Judges had jurisdiction to act but rather to their belief that the Defendant Judges took actions that exceeded their authority. But a judge does not lose immunity merely by acting in excess of their authority. *See Kowalski*, 893 F.3d at 997–98 (contrasting a case where a judge "gratuitously inserted herself into a case proceeding before another judge" and so "acted in the clear absence of jurisdiction" from a case where a judge had "technically lost jurisdiction" but "could reasonably believe that he retained some control over the case," and so retained judicial immunity). Additionally, the Seventh Circuit has explicitly "rejected the argument that a chief judge acts without jurisdiction when overseeing or directing the business of the court." *Id.* at 999. Therefore, because the Defendant Judges all acted in their judicial capacity with respect to actions conceivably within their jurisdiction, judicial immunity protects them from Plaintiffs' claims. *See Girard v. Vill. of Glencoe*, No. 24 C 6882, Doc. 121, at 4 (N.D. Ill. Aug. 12, 2025) (judicial immunity barred claims against judges, who purportedly entered orders unfavorable to the plaintiff in exchange for bribes, because the "entering of orders were judicial acts taken pursuant to the jurisdiction of the Circuit Court of Cook County"); *Faulkner v. Loftus*, No. 16 CV 02432, 2018 WL 11181980, at *17 (N.D. Ill. Mar. 30, 2018) ("When a judge does something that qualifies as a judicial act . . . absolute immunity applies—even if the conduct was baseless, malicious, corrupt, or violates the Constitution.").

15

### III.    Remaining State Law Claims

After finding that abstention and judicial immunity apply to the majority of Plaintiffs' claims, only Plaintiffs' civil conspiracy claim against Elster and the Village Defendants (Count III) and their IIED claim against Jane and the Beermann Defendants (Count VII) remain. But both of these claims arise under state law only.[6] Because no federal claims remain pending and Plaintiffs could not establish diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over the civil conspiracy and IIED claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss [52, 53, 54, 55] in part. The Court dismisses Plaintiffs' first amended complaint without prejudice to raising any claims not barred by judicial immunity in state court. Case terminated.

Dated: April 22, 2026

SARA L. ELLIS
United States District Judge

---

[6] Elster and the Village Defendants also make arguments as to why a § 1983 civil conspiracy claim could not succeed. The Court finds it unnecessary to address these arguments in detail given that no underlying federal claim remains pending at this time. *See Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (for a conspiracy claim, a plaintiff "must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm" (citation omitted) (internal quotation marks omitted)); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("We note at the outset that conspiracy is not an independent basis of liability in § 1983 actions.").

16